McDowell *et al. v.* Hendrix, Executor.

———————◆———————

McDOWELL ET AL. *v.* HENDRIX, EXECUTOR.

MINES AND MINING.—*Lease.—Action by Lessor's Executor. against Lessee and Assignee, for Rent.—Parties.—Heir.—Complaint.—Abandonment of Lease a Defence.*—A lease of certain lands, for mining the coal beneath its surface, provided that the lessee should pay to the lessor a certain sum for each ton of coal mined each year, and that, after the first year, the amount of the rent should not be less than a specified sum. It also provided that " If no coal is found under said land, and this lease is abandoned, then said payments are not to be made." The lessor having died testate, his executor brought an action on the lease, against the lessee and one to whom he was alleged to have assigned in writing an interest in the lease, to recover for rents alleged to have accrued during the second year of the lease, and in the lifetime of the assignee, averring that the defendants had paid to the lessor the royalty agreed on the coal mined during that year by the defendants, being a certain sum less than the agreed minimum rent.

*Held*, on demurrer, that the executor, and not the heir, was the proper party plaintiff.

*Held*, also, that abandonment of the premises was matter of defence, and need not be negatived by the complaint.

*Held*, also, that the assignee was liable jointly with the lessee.

SAME.—The fact that sufficient coal could not be mined to make the royalty amount to the minimum rent, though it might be ground for abandoning the lease, constitutes no defence, so long as the defendants continue in possession, to an action on the lease, for the rent.

SAME.—*Mortgage.—Insolvency.*—The fact that the land had been mortgaged prior to the execution of the lease, that the lessor's estate was insolvent, and that the mortgagee was threatening foreclosure, was no defence to an action for the rent.

From the Clay Circuit Court.

*S. W. Curtis* and *E. S. Holliday,* for appellants.

*G. A. Knight, C. H. Knight* and *I. M. Compton,* for appellee.

HOWK, C. J.—In this action, the appellee sued the appellants and one Robert McBeth, for the recovery of certain money claimed to be due and unpaid, under a written lease executed by and between the appellee's testator, John Hendrix, in his lifetime, and said Robert McBeth.

To the appellee's complaint the appellants demurred, for the alleged insufficiency of the facts therein to constitute a cause of action, which demurrer was overruled by the court, and to this ruling they excepted. They then answered in four paragraphs, to the second and fourth paragraphs of which answer the appellee's demurrer, for the alleged want of sufficient facts therein, was sustained by the court, and to this decision the appellants excepted. To the other affirmative paragraph of said answer, the appellee replied, putting the case at issue.

The cause was tried by the court, and a finding was made for the appellee, assessing his damages in the sum of nine hundred and seventy-five dollars; for which sum the court rendered the judgment from which this appeal is now prosecuted.

In this court, the appellants have assigned, as errors, the following decisions of the court below:

1. In overruling their demurrer to appellee's complaint; and,

2. In sustaining appellee's demurrer to the second and fourth paragraphs of their answer.

We will consider and decide the questions presented by these alleged errors, in the order of their assignment.

1. In his complaint, the appellee alleged, in substance, that, on the 20th day of May, 1873, his testator, then in life, entered into a written agreement, or lease, with the defendant McBeth, by the terms of which said testator granted, demised and let to said McBeth the real estate therein described, for the sole purpose of digging, mining and removing the coal thereunder, for the term of twenty years therefrom ; that, by the terms of said lease, a copy of which was filed with said complaint, said Mc-Beth agreed to pay said testator at the rate of thirty cents per ton of two thousand one hundred and fifty pounds, for all coal mined which passed over and was retained by a screen·with meshes from three-fourths to one inch, said payments to be made monthly ; that said lease contained the further stipulation, that, " after the expiration of the first year from this date, said second party agrees to pay said first party, during each and every year, the sum of two thousand dollars, whether said rent, on coal dug and mined, shall amount to said sum or not, and said annual sums shall be deducted out of rent of coal, provided said rent shall exceed said sum so as above agreed to be paid annually ;" that said McBeth afterward entered upon said land and sunk a shaft and began to dig and mine said coal, and afterward assigned an interest in said lease to his codefendants, the appellants in this court, a copy of which assignment could not be given for the reason that the appellants had possession thereof ; that, from May 20th, 1874, to May 20th, 1875, the appellants and McBeth dug and mined enough coal to make the royalty thereon amount to one thousand one hundred and fifty dollars, which sum they paid said testator, leaving due and un-

paid of said annuity of two thousand dollars, provided to be paid each year, the sum of eight hundred and fifty dollars, which they failed and refused to pay, although the appellee had, before the commencement of this suit, demanded payment thereof; and that the appellee's testator, John Hendrix, had died testate on the 25th day of August, 1875, and the appellee had been duly and legally appointed and qualified executor of his will. Wherefore, etc.

The objections of the appellants' counsel, to the sufficiency of the appellee's complaint, seem to be founded, in part at least, upon a stipulation in the written lease, upon which the suit was brought, to the effect that " if no coal is found under said land, and this lease is abandoned for that reason, then said payments are not to be made, or, if made, the same shall be refunded." . It is claimed by counsel, as we understand them, that the complaint was and is bad on the demurrer thereto for the want of facts, because it was not alleged therein that the appellants had continued in the possession of the demised premises, during the year mentioned in the complaint, and had not abandoned the lease for the reason that no coal had been found under said premises. It seems to us, however, that, if the appellants had abandoned the lease for the reason given, that fact would have been purely and simply a matter of defence to be shown by them, and that it was not necessary for the appellee to negative that fact in his complaint, in order to show a good cause of action.

Appellants' counsel also claim that the complaint did not show a cause of action in the appellee, as executor, because, as they say, the lease in suit " runs with the land, and the proceeds belong to the heirs, and not to the executor." On this point we have been referred by counsel to the recent case of *Hendrix* v. *Hendrix*, 65 Ind. 329 ; but the case cited does not seem to us to have much bear-

ing upon the question for decision, in the case now before us, and none at all in favor of the position assumed by counsel, in this case. In that case, it was expressly stated in the opinion of the court, that the rents and royalties, collected by the executor, had accrued after the death of the testator, and it was properly held that the executor, as such, had no lawful right to collect such rents and royalties, and, therefore, could not lawfully charge his testator's estate with the moneys collected by him, on that account. But, in the case at bar, it clearly appeared from the allegations of his complaint, that the appellee, as executor, sued for the recovery of rent and royalty, which had matured and become due on the 20th day of May, 1875, and that his testator did not die for more than three months thereafter, to wit, on the 25th day of August, 1875. It is very clear, we think, that whatever rent or royalty had matured and become due, under the lease in suit, in the lifetime of the appellee's testator, would go to the appellee, as executor, and not to the heirs at law or the devisees of the decedent. *King* v. *Anderson*, 20 Ind. 385.

It is further said by the appellants' counsel, in their brief of this case, that as it is not averred in appellee's complaint, that the appellants " promised to pay this annuity, it seems quite beyond our views of legal liability to understand how they can be sued upon a contract which they never made, and never promised to perform, and never derived any benefit from." Elsewhere, in their brief, the same learned counsel have conceded, or rather claimed, that " this lease, as shown by the complaint, runs with the land." It is alleged, in the complaint, that the lessee, McBeth, had assigned to the appellants an interest in this lease, which " runs with the land," and that they and McBeth had, during the year mentioned in the complaint, dug and mined coal on the demised premises and had paid a part of the royalty or annuity due for that year. Under the allegations of the

complaint, it seems to us, that the appellants, as the assignees of the lease, whose covenants run with the land, were clearly liable for the rent of the demised premises, due and unpaid for the year mentioned in the complaint. The assignees of the lessee are liable to the lessor, his representatives or assigns, for the rent of the demised premises for and during the time such assignees hold said premises, according to the terms and covenants of the lease ; " for though there is no privity of contract, there is a privity of estate which creates a debt for the rent." *Howland* v. *Coffin,* 9 Pick. 52 ; *Gordon* v. *George,* 12 Ind. 408; *Carley* v. *Lewis,* 24 Ind. 23 ; Taylor Landlord and Tenant, sections 436 to 454, inclusive.

In our opinion, the court did not err in overruling the appellants' demurrer to the appellee's complaint.

2. In the second paragraph of their answer, the appellants alleged, in substance, that after the execution of the lease mentioned in appellee's complaint, and before any work had been done thereunder, they acquired an interest in said lease jointly with their codefendant, McBeth ; that, before the execution of said lease, the land described therein had been thoroughly drilled and tested, in the manner generally used, to ascertain the existence, quality and extent of coal deposits, under and by the directions of the lessor, John Hendrix, Sr. ; that said drilling and tests indicated the existence of coal, as exhibited to the appellants by said lessor, under said land, in large quantities, and in excellent condition, the said drilling having passed through the veins of coal where they were the thickest and in the best condition, and where said coal was freest from imperfections, and where there were the least obstacles in the way of mining said coal ; that, at the time of the execution of said lease, the parties thereto believed, for the reasons stated, that said land contained large deposits of coal, that the same was in excellent condition and

could be easily worked, and that the veins thereunder were at least four feet thick and free from obstructions, and with proper appliances and reasonable diligence the lessee could mine from said land a sufficient quantity of coal each year to make the royalty thereon amount to two thousand dollars; that the lease was entered into and executed under that impression and belief, by all the parties thereto; that the parties thereto had no means of ascertaining the extent and quality of said coal deposits, other than those above mentioned; that, when the appellants acquired their said interest in said lease, they knew of said drillings and tests, and each of the parties to said lease believing that they indicated the real condition and extent of the coal deposits, and having no other information or knowledge in regard to said coal, they were induced to, and did, acquire their said interest therein; that, pursuant to said lease, they opened a mine on said land, and began to excavate and mine coal; that they extended the openings and entries in said mine, as far and as fast as the peculiar condition of the ground and coal formations would permit; that since the time, mentioned in the lease, when an annual royalty of two thousand dollars should thereafter be paid, they had continuously operated said mine up to its full capacity, and had extended and increased it as rapidly as they possibly could, but that the quality and condition of coal, in said land, were not such as were indicated by said drillings and tests; that the average thickness of the coal veins did not exceed three feet, instead of four feet, as indicated; that, contrary to the expectations of the parties to the lease, the coal in said mine was difficult to work, for the reason that it abounded in obstructions, usually known as "horsebacks" and "troubles," all of which were unknown to the parties thereto; that said coal veins were very irregular and full of inequalities, being sometimes cut in two by deposits of earth

and slate, which must be removed, at great labor and expense; that by reason of the limited quantities of coal in said land, and the difficulty as stated of mining the same, it was impossible to mine from said land a sufficient quantity of coal, for the royalty thereon to amount to two thousand dollars, at the price stipulated in the contract under which the appellants were working; that all the parties to the lease relied solely upon the indications of the quality and quantity of the coal underlying said land, from the tests so made, and made said contract in the full belief that said amount of coal could be easily mined, and that such mistake was the mutual mistake as to the facts, and they alleged that said contract would have never been executed, had not the parties thereto been misled as aforesaid; and the appellants averred that the coal deposits in said land were nearly exhausted; that the difficulties of mining the same were constantly increasing, and that it would be absolutely impossible for them, or any other persons, to take from said land at any time the coal, for which royalty was demanded in appellee's complaint, in addition to the amount required by the terms of said lease to be taken out every year, and that they had already paid for all coal underlying said land. Wherefore they asked that they might be released from said contract to the extent that the consideration had failed, and for other proper relief.

We have given the appellants the benefit of a full statement of the facts alleged and relied upon by them in the second paragraph of their answer; but we can not avoid the conclusion, that these facts were and are utterly insufficient to constitute a valid defence in their behalf to appellee's action. The appellants admit, in this paragraph of answer, that, after the execution of the lease in suit, they acquired an interest therein from the lessee, McBeth, jointly with him, before any work had been done thereunder; and that, pursuant to said lease, they had opened

a mine on the land demised, and had begun to excavate and mine coal. As the assignees of McBeth, they entered with him, under his lease, into the possession of said land for the purposes expressed in said lease. While they continue in the use and occupation of said land, under said lease, they are liable to the lessor, or those claiming under him, for the rents or royalties reserved in such lease, according to the terms thereof; and they can escape such liability in no other way or manner, except by the abandonment or surrender of the possession of the demised premises. The gist of this second paragraph of answer would seem to be, that the contract of the lessee, for the payment of rent or royalty, was a hard one and difficult to be performed, or, as the appellants aver, "that it will be absolutely impossible for them, or any other persons, to take from said land, at any time, the coal for which royalty is demanded in plaintiff's complaint." It is clear, we think, that this alleged impossibility to take from the land sufficient coal to make the royalty demanded, and for which the appellants were liable as assignees of the lessee, would constitute no defence whatever in their favor, so long as they continued in possession of the land. Thus, in the case of *Gowan* v. *Christie*, 5 Moak Eng. Rep. 114, it was held, in substance, that the lessee of a mine, although he might rely on the " being or existence " of the coal or other mineral, takes all risk, either as to its quantity or value, unless either is expressly warranted; and that, at common-law, the mere fact of the " unworkability to profit " of a mine afforded no ground for reducing or throwing up a lease of minerals, which were in their nature subject to many vicissitudes, and there being, in such a case, no legal warranty on which the lessee could rely. See, also, on the point under consideration, the case of *Clifford* v. *Watts*, Law Rep., 5 C. P. 577, wherein it was said, that where a man may

have contracted to do something which, in the present state of scientific knowledge, might be utterly impossible, and yet have so contracted as to warrant the possibility of its performance, by means of some new discovery, or be liable in damages for the non-performance, he could not set up, by way of defence, that the thing to be done was impossible. In the case last cited, WILLES, J., said: "Where a thing becomes impossible of performance by the act of a third person, or even by the act of God, its impossibility affords no excuse for its non-perfomance: it is the defendant's own folly that has led him to make such a bargain, without providing against the possible contingency." *Paradine* v. *Jane*, Aleyn, 26; *Barker* v. *Hodgson*, 3 M. & S. 267; and *Hills* v. *Sughrue*, 15 M. & W. 253.

It seems to us, however, that the question of the absolute impossibility to perform the covenant in suit is not shown, in this case, either by the covenant itself, or by any of the averments of the second paragraph of the appellants' answer. The covenant itself reads as follows: "After the expiration of the first year from this date" (the date of the lease), " said second party agrees to pay said first party, during each and every year, the sum of two thousand dollars, whether said rent, on coal dug and mined, shall amount to said sum or not, and said annual sums shall be deducted out of rent of coal, provided said rent shall exceed said sum so as above agreed to be paid annually." The fair construction of this covenant, taken in connection with the other provisions of the lease, is that the lessee, McBeth, thereby agreed that, after the first year of the lease, he would pay a *minimum* annual rental for the demised premises of two thousand dollars, in any event, and no more unless the number of tons of coal mined, in any year, at thirty cents per ton, should make an aggregate sum in excess of said minimum rent or royalty, in which event he would also pay such excess.

The impossibility to perform this contract, which is relied upon by the appellants, in the second paragraph of their answer, as a defence to this suit, is the alleged impossibility to excavate and mine, from the land demised, a sufficient number of tons of coal, at thirty cents per ton, in any one year, to make an aggregate sum equal to such minimum rent or royalty of two thousand dollars, which the lessee agreed should be paid during each and every year, whether the coal dug and mined, at thirty cents per ton, should amount to that sum or not.

Upon the question now under consideration, it seems to us that the case of *The Marquis of Bute* v. *Thompson*, 13 M. & W. 487, is directly in point. In that case, as in this, the lessee had agreed to pay the lessor a certain sum per ton for each ton of coal mined, and had further agreed that he would pay a fixed sum, each year, as fixed rent, whether the coal should be worked or not; and the lessee having failed to raise the quantity of coal which, at the agreed price per ton, would amount to the fixed rent, he was held bound at all events to pay such fixed rent. POLLOCK, C. B., said:

"We are of opinion that this stipulation for a fixed rent, coupled with a covenant that coal should be wrought to that extent, and if above it, that there should be a payment of 9 *d.* for each ton over and above, does not carry with it, by any implication, a condition that there shall be coals to that amount capable of being wrought. It appears to us to be a stipulation on the part of the defendants that they would work and get that quantity, and that if they did not get it, they would pay a fixed rent to the landlord; and we can not import into that covenant a condition that there should be coals to that extent. If that was the intention of the parties, they should so have expressed it."

In the case at bar, the lessee virtually said to the lessor, in and by the covenant above quoted, "If you will exe-

cute this lease to me, I will pay you an annual rent or royalty of two thousand dollars for each and every year, after the first year, whether the coals dug and mined by me, at thirty cents per ton, shall amount to that sum or not." It is certainly not impossible for the appellants to perform this contract, and while they continue in the possession of the land demised, as the assignees of the lessee, we think they must be held bound to such performance, to the extent of the payment of such minimum rent or royalty, according to the terms of the lease. *Mellers* v. *The Duke of Devonshire*, 16 Beav. 252; *Powell* v. *Burroughs*, 54 Pa. State, 329; Blanchard & Weeks Leading Cases on Mines, etc., p. 426, *et seq.*

We think, therefore, that no error was committed by the court below in sustaining the appellee's demurrer to the second paragraph of the appellants' answer, in this case.

3. In the fourth paragraph of their answer, the appellants alleged, in substance, that the land demised, prior to the execution of the lease in suit, had been mortgaged to ——— Insurance Company, for a large sum of money, but by whom it was mortgaged, or to what insurance company, they apparently forgot to allege; and, further, they said that the mortgage was due, the estate of the appellee's testator was probably insolvent, and the holders of the mortgage were threatening to foreclose it. These facts were so clearly insufficient to constitute a defence to the appellee's action, that the appellants' counsel, in their elaborate briefs of this cause, have not discussed the alleged error of the court, in sustaining appellee's demurrer to the fourth paragraph of answer. The supposed error might, therefore, be regarded as waived; but, whether waived or not, we think that the court did not err in sustaining the demurrer to this paragraph of answer.

We find no error in the record.

The judgment is affirmed, at the appellants' costs.