VANDALIA COAL COMPANY ET AL. *v.* UNDERWOOD.

[No. 7,999. Filed May 28, 1913. Rehearing denied November 6, 1913. Transfer denied December 9, 1913.]

1. APPEAL.—*Assignment of Errors.—Waiver.*—Alleged errors in overruling and sustaining demurrers are waived by appellant's failure to discuss same. p. 93.

2. APPEAL.—*Exceptions to Conclusions of Law.—Admissions.*—Exceptions to the trial court's conclusions of law, for the purposes of the appeal, concede that the facts are fully and correctly found. p. 96.

3. MINES AND MINERALS.—*Coal Lease.—Construction.*—A provision in a lease of coal lands that the lessee is to mine sufficient coal "to make the royalty thereon amount to $600 annually, or in default thereof pay said sum each year, * * * and any sum paid in excess of royalty of coal mined shall be treated as advanced royalty, and shall be deducted out of any excess over $600 in any year or years thereafter," is not ambiguous as to when the operator is entitled to credit for royalties previously paid, but by its terms gives the right to such credit only where the minimum of $600 has been paid without mining coal sufficient during the year to amount to that sum, and in a succeeding year the royalty on coal actually mined exceeds $600, in which event a credit may be had on such excess of the difference between the amount of royalty for coal actually mined in such previous year and the $600 actually paid. pp. 97, 98.

4. CONTRACTS.—*Construction.*—Where the language employed expresses a definite meaning involving no absurdity or contradiction between different parts of an instrument, the court will not resort

to extrinsic facts to arrive at the intention of the parties, but will give effect to the meaning apparent from the language employed.   p. 97.

5.   Mines and Mining.—*Coal Lease.—Action for Royalties.—Findings.—Conclusions of Law.*—In a lessor's action on a coal lease providing that the lessee should mine sufficient coal each year to make the royalty amount to $600 annually, and in default thereof to pay said sum each year, and that any sum paid in excess of royalty of coal mined should be treated as advanced royalty and be deducted from any excess over $600 in any year thereafter, where the court found that for a certain year the royalty on coal mined amounted to only $245.86, which was the sum paid, and that for the previous year the royalty amounted to $838, which sum was paid, a conclusion of law stated thereon that there was due plaintiff the sum of $354.14 as unpaid annuity for the last year was not erroneous, but strictly in accordance with the terms of the lease.   p. 98.

6.   Contracts.—*Construction.*—While extraneous matter may be considered where a contract is ambiguous, for the purpose of ascertaining and effectuating the original intention of the parties, the court cannot make a new contract for them, but must, in the absence of fraud, give effect to the contract actually entered into. p. 98.

7.   Mines and Mining.—*Coal Lease.—Action for Royalties.—Findings.*—In an action to recover royalty due under a coal lease providing for a minimum sum to which the lessor was entitled each year, where it was found that coal was mined during a certain year which produced royalty in a sum less than such minimum, and that the coal was not exhausted when operations ceased, the further finding that the mine could not be operated at a profit, would not prevent a recovery of such minimum rental. p. 99.

8.   Appeal.—*Review.—Findings.—Conclusions of Law.*—In an action for rentals due under a coal lease providing for a minimum annual rental, conclusions of law that the operator of the mine, as assignee of the lease, was primarily liable for the amount due, that as between the parties the original lessee became surety for the payment of such amount, and that the property of the operator should first be exhausted in satisfaction of the judgment before levying on the property of the original lessee, were not erroneous.   p. 99.

From Putnam Circuit Court; *John M. Rawley,* Judge.

Action by Amos Underwood against the Vandalia Coal Company and another.   From a judgment for plaintiff, the defendants appeal.   *Affirmed.*

*Barrett & Barrett, Thomas W. Hutchison, Davis & Bogart* and *Henry W. Moore,* for appellants.

*Albert Payne,* for appellee.

FELT, P. J.—This is a suit upon a lease of coal lands executed by the appellee to appellant, Ray, which lease passed by successive assignments to the Central Coal Company, the Asherville Mining Company and then to appellant, the Vandalia Coal Company. The complaint was in one paragraph to which a demurrer was overruled. Nine paragraphs of answer were filed, the first of which was a general denial. A demurrer for want of facts was sustained to the third, fourth, seventh, eighth and ninth paragraphs and overruled as to the second, fifth and sixth. A reply in general denial was filed to the paragraphs of answer to which the demurrer was overruled. The court, at the request of the parties, made a special finding of facts and stated its conclusions of law thereon, which were in favor of appellee. Appellants have each assigned as error the overruling of the demurrer to the complaint for insufficiency of facts alleged, and the sustaining of the demurrer to each of the paragraphs of answer as above indicated; also error in each conclusion of law stated upon the finding of facts and in overruling the separate motions of appellants for a new trial. The questions relating to the several demurrers are not discussed and are therefore 1. waived, but the exceptions to the conclusions of law on the facts found fully present the questions relied on by appellants.

The substance of the finding of facts, as far as material to the questions discussed in the briefs, is as follows: that appellant Vandalia Coal Company is a corporation organized under the laws of the State of New Jersey and doing business in the State of Indiana; that on October 19, 1904, appellee executed to appellant, William W. Ray, a lease, the substance of which is as follows: For the period of fifteen years, 40 acres of real estate in Clay County, Indiana,

leased for the sole and only purpose of digging, mining and removing therefrom coal, clay and other minerals, lying below the surface, "unless the minable coal in said land and adjoining land be sooner exhausted"; the lessee to make search for coal and, if found in sufficient thickness, quality and quantity, and roof of sufficient strength, in the opinion of the lessee, to justify mining, then to sink a shaft to the bed of the coal and to have the same ready for operation within six months from the date of the lease and to pay the lessor for coal of a certain grade, ten cents per ton and for inferior grades seven cents per ton, between the 16th and 25th of each month, for coal mined the preceding month. The lessee after one year from date of lease was to mine sufficient coal to "make the royalty thereon amount to $600 annually, or in default thereof to pay said sum each year, after the completion of a shaft or the commencing of mining operation in said land, and any sum paid in excess of royalty of coal mined shall be treated as advanced royalty, and shall be deducted out of any excess over $600 in any year or years thereafter; provided, however, that said annuity shall not be payable until after the expiration of one year from the completion of a shaft or the commencement of mining operations in said lands; and further provided that upon the failure of said second party to sink said shaft or begin mining operations within the time hereinbefore stipulated party of the second part agrees to pay at the expiration of said time the sum of $600 to said first party as advanced royalty to be deducted as hereinbefore provided. The party of the second part reserves the right to abandon said land and mining at any time when on account of thinness of coal or poor roof." That the lessee entered upon said real estate and made search for coal during the months of November and December, 1904, and entered into an arrangement with the Asherville Mining Company by which it sank a shaft to the bed of coal underlying the surface of the land; that the shaft and tipple

erected were completed on January 16, 1905, and thereupon the company began to dig and mine coal from said land, and continued so to do until August of that year; that thereafter the Central Coal Company acquired an interest in the lease and on August 9, 1905, Ray and both of said companies executed an assignment of the lease to the appellant, Vandalia Coal Company, which assignment and conveyance was duly accepted on August 28, 1905, and said appellant entered into possession of said mine and the property connected therewith; that from the time of said assignment the appellant, Vandalia Coal Company, continued to operate the mine until December 24, 1907, when it ceased operating the same and no coal has since been mined or removed therefrom; that in January, 1908, the Vandalia Coal Company removed the cars, rails and other personal property from said mine and dismantled the tipple and buildings; that on said date, the coal varied in thickness in different entries and parts of said mine, from two feet two inches to three feet two inches and in the entries was getting thinner as the work progressed; that the coal in some of the pillars between the main entry and air course was three feet thick and there was coal three feet thick in the south and southeast parts of the land covered by the lease; that coal as thin as two feet six inches can be mined in the usual method of mining without taking up any bottom, except three feet for road way, but with coal thinner than two feet six inches it is necessary to take out the bottom in order to operate successfully; that the roof of said mine had occasional "water-slips" but by usual and ordinary methods of propping could be made reasonably safe; that the coal in the mine more than two feet six inches in thickness could have been mined and taken out by the usual and ordinary methods of mining; that the quality of coal in the mine was a good hard block coal except the upper nine inches which was soft and of an inferior quality, by reason of which the coal graded on the market as No. 3 and sold for from ten

to twenty cents less per ton than first grade block coal; that the clay bottom under the coal was soft and made it difficult to support the roof; that at all times while the mine was operated, it was operated at a substantial loss, though the lessees exercised diligence and careful management; that by diligence and careful management with ordinary facilities under ordinary market conditions, the mine could not be operated so as to yield a profit to the operator; that all royalties and annuties were paid in full to January 16, 1907; that the year beginning January 16, 1907, the Vandalia Coal Company mined coal sufficient to make the royalty amount to $245.86 which amount was paid; that from August 28, 1906, to January 16, 1907, the Vandalia Coal Company mined coal sufficient to make the royalty amount to $573.29 which amount was paid; that during the year beginning January 16, 1906, sufficient coal was mined to make the royalty amount to $838 which amount was paid to appellee by said company.

Upon the foregoing facts the court stated its conclusions of law as follows: (1) there is due the plaintiff the sum of $354.14 as unpaid annuity for the year beginning January 16, 1907, which with interest from January 16, 1908, amounts to $414.35; (2) that by the several assignments of said lease, the appellant Vandalia Coal Company became primarily liable for the payment of the royalties and rentals due under said lease and appellant Ray, as between the parties, became surety for the payment of the amount due as aforesaid; (3) for the collection of the judgment, the property of the appellant Vandalia Coal Company should first be levied upon and if the judgment is not satisfied from such levy then levy should be made upon the property of said Ray.

Appellants duly excepted to each conclusion of law. Such exceptions, for the purposes of the appeal, concede

2. that the facts are fully and correctly found. Appellants contend that the lease is ambiguous and should

be construed in the light of the situation of the parties, the custom relating to coal mining and in accordance with equitable principles. The particular point in controversy relates to the payment of the minimum annual rental

3. of $600. Appellants contend that the lease should be so construed as to hold that the parties intended that the rental should average $600 per year and that if coal was mined in one year so as to make the royalty for that year exceed $600 and in any succeeding year the amount actually mined made the royalty less than $600, the operator should have credit for the amount previously paid in excess of $600, though such excess was for coal actually mined and paid for at the price per ton named in the lease. We find no ambiguity in the lease. By its terms, the only instance in which the lessee may have credit for money previously paid, arises when he has paid the minimum annuity of $600, but has not mined sufficient coal to amount to that sum, according to the rate of royalty specified in the lease, and thereafter in some succeeding year mines sufficient coal to make the total royalty for that year exceed $600, in which event he may credit on such excess the difference between the amount of royalty for coal actually mined in such previous year, and $600 actually paid, but in no instance can he have credit for an amount paid in excess of $600 for coal actually mined. In con-

4. struing any instrument, the first duty of the court is to examine the instrument itself and if from such an examination of the whole instrument, the language employed expresses a definite meaning involving no absurdity or contradiction between different parts of the instrument, then there is no necessity for resorting to extrinsic facts to arrive at the intention of the parties, and the meaning apparent from the language so employed will be enforced as the intention of the parties. *Blythe* v. *Gibbons* (1894), 141 Ind. 332, 344, 35 N. E. 557; *Warrum* v. *White* (1908),

171 Ind. 574, 577, 86 N. E. 959; *Louisville Underwriters* v. *Durland* (1889), 123 Ind. 544, 549, 24 N. E. 221, 7 L. R. A. 399.   In this instance, the relation of the parties, the subject-matter, the consideration and the object of each of the contracting parties are so clearly and definitely expressed, as to bring the instrument within the rule above announced.   The lease fixes the rate of royalty and provides a minimum annual rental or annuity.   The amount to be paid is primarily determined by the royalty specified and the amount of coal mined in any given year, subject to the condition that after the first year, if the coal mined in any single year does not amount to $600, the lessee shall pay that sum as a minimum rental for the leased property.   There is the further condition clearly expressed that if $600 is paid for any such year, when at the rate of royalty sufficient coal has not been mined to equal that sum, the excess payment above the amount actually mined may be applied in the succeeding year as a credit for coal actually mined in such year in excess of the quantity necessary to produce the minimum annual rental of $600, at the specified royalty.   The operator may in a succeeding year obtain credit for an amount previously paid in excess of the sum due on the royalty basis for coal actually mined, but in no event can he obtain credit for payments previously made for coal actually mined and obtained by him.

From the finding and conclusions of law, it is apparent the court deducted from $600 or the minimum annual rental, the amount actually paid for the last year's operation, and gave judgment for the balance of the $600 and refused to give credit for any excess of $600 paid in any previous year for coal actually mined at the specified royalty.   This was in strict accordance with the terms of the lease.   The court cannot make a new contract for the parties, and in the absence of fraud, can only give effect to the contract actually entered into.   This is the rule as to all contracts.   If the contract is ambiguous,

extraneous matter is considered, not to change the contract but to ascertain and give effect to the original intention of the parties.

Appellant contends that the case must be governed by a line of decisions which deal with cases where there was a failure to find coal or ore to be mined or where there was a failure after operation had been begun and for that reason operation was abandoned. The finding of facts determines this phase of the case. Coal was found, the mine was operated, the coal was not exhausted when operations ceased, and there is nothing claimed except the balance of the annuity for the year of actual operation. True, the finding shows that the mine could not be operated at a profit, but this affords no ground for a refusal to pay the minimum rental while the mine was actually operated. *McDowell* v. *Hendrix* (1879), 67 Ind. 513; *Watson Coal, etc., Co.* v. *Casteel* (1881), 73 Ind. 296; *Cottrell* v. *Smokeless Fuel Co.* (1906), 148 Fed. 594, 78 C. C. A. 366, 9 L. R. A. (N. S.) 1187; *Ridgely* v. *Conewago Iron Co.* (1893), 53 Fed. 988; Barringer and Adams, Mines and Mining 108, 173; *McIntyre* v. *McIntyre Coal Co.* (1887), 105 N. Y. 264, 11 N. E. 645. What would be the rights of the parties, within the term of this lease, if the mine were abandoned for insufficiency of quantity or because of inferior quality of coal, or want of profit to justify operation, is not involved in this appeal and upon that question we express no opinion.

The court did not err in its second and third conclusions of law. *Jordan* v. *Indianapolis Water Co.* (1902), 159 Ind. 337, 347, 64 N. E. 680; *McDowell* v. *Hendrix, supra*, 518. The amount of damages allowed is in accordance with the facts found. We find no error in the record. Judgment affirmed.

Note.—Reported in 101 N. E. 1047. See, also, under (1) 3 Cyc. 388; (2) 38 Cyc. 1992; (3) 27 Cyc. 722; (4) 9 Cyc. 577; (6) 9 Cyc. 577, 587.