(106 So. 855)

## CORONA COAL CO. v. HENDON.
### (6 Div. 575.)

(Supreme Court of Alabama.  Jan. 14, 1926.)

1. Mines and minerals ⊕➾70(1) — Royalties paid in excess of minimum requirements of coal mine lease could not be applied in satisfaction of minimum royalties accruing thereafter.

Where lease of coal lands provided for payment of minimum monthly royalties and that any excess royalties paid over and above royalty on coal actually mined shall be applied to pay royalties on coal mined in excess of minimum for any month during life of lease, royalties paid in previous year in excess of minimum requirements cannot be applied in satisfaction of minimum royalties accruing in the future, but such paid in excess can only be applied when unpaid royalties for coal actually mined show an excess over minimum for any subsequent month.

2. Contracts ⊕➾170(1) — Construction placed on continuing contract in course of execution to be considered in construing doubtful terms.

Construction placed upon a continuing contract by word or act of parties in course of execution may be looked to for the legal construction of terms of doubtful import.

3. Estoppel ⊕➾90(2)—Agreed construction put on lease relied on by assignee of lessee held binding on lessor, though at variance with terms of lease.

If an agreed construction is being put on a continuing contract between parties, and a third person is induced to accept an assignment of the contract from lessee thereof on faith of such construction, the lessor knowingly acquiescing therein is bound by estoppel, though agreed construction is at variance with terms of lease.

4. Estoppel ⊕➾90(2)—Construction put on continuing contract relied on by assignee held equivalent to modification of its terms.

Construction put on continuing contract relied on by assignee of one of parties with knowledge by the other party is equivalent to a modification of terms of executory contract by mutual agreement.

5. Mines and minerals ⊕➾70(1)—Failure to pay minimum royalties for two months over period of seven years held not to show agreed construction of contract at variance with its terms.

Failure to pay minimum royalties required in lease of coal lands for two months over period of 7 years, which was fully covered by excess payments of succeeding months, furnishes no basis for an agreed construction of the lease at variance with its terms requiring full payment of minimum royalties regardless of amount of coal mined nor for an estoppel in favor of a subsequent assignee of the lessee.

6. Mines and minerals ⊕➾70(2)—Payment of royalty during strike period held not relieved by provision for forfeiture on failure to pay royalties unless due to strikes.

Under lease of coal lands providing for forfeiture for failure to pay royalties unless due to strikes, lessee is not relieved from payment of minimum royalties during period when mines were shut down because of a strike; provision relating only to question of forfeiture.

Appeal from Circuit Court, Walker County; R. L. Blanton, Judge.

Action by T. S. Hendon against the Corona Coal Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Bankhead & Bankhead, of Jasper, and Percy, Benners & Burr, of Birmingham, for appellant.

The purpose of the lease provisions was to insure the lessor an average income during the life of the lease; if the lessee mined more than the minimum in some months and less in others, he should have credit for the surplus in those months when less than the minimum was mined. Render v. McHenry (Ky.) 14 S. W. 678. The construction placed by the parties on the contract is of vital importance in interpreting the contract. Comer v. Bankhead, 70 Ala. 136; Birmingham Waterworks v. Windham, 190 Ala. 634. This construction, placed upon the contract before assignment to defendant, should not be departed from. Dickerson v. Colgrove, 100 U. S. 578, 25 L. Ed. 618. The strike clause in the contract is a remission of royalty for that period.

W. F. Finch, of Lake Worth, Fla., and Gray & Powell, of Jasper, for appellee.

: Under the lease the royalty is due every month, whether any coal is mined, and regardless of how much has been mined in the past. The lessee takes credit on the coal actually mined for amounts paid as minimum royalty over what was actually mined. Vandalia Coal Co. v. Underwood, 55 Ind. App. 91, 101 N. E. 1047; 150 Ill. 344, 37 N. E. 937. The lessee is not entitled to relief from payment of royalty on account of labor strikes at the mines. 13 C. J. 635. The transferee of the lease is bound by all the burdens imposed by the lease. Bruce Coal Co. v. Bibby, 201 Ala. 121, 77 So. 545.

BOULDIN, J. The suit is to recover royalties alleged to be due by the terms of a lease of coal lands. The trial was upon an agreed statement of facts. The lease carries the usual mining rights for a period of 20 years from January 1, 1910, or until the merchantable coal is mined. At least 150,000 tons of workable coal remain unmined. The mines were operated from 1911 to 1920, and all royalties for coal actually mined have been paid. This action is for balance on minimum royalties alleged to have accrued during 1919 and 1920, when the royalties paid did not equal the minimum stipulated, and for the full minimum royalties since operations were suspended in May, 1920. The minimum tonnage on which royalty shall be paid is fixed at 2,500 tons per month at 8 cents per ton, or $200 minimum royalty.

The case turns upon the construction of the following stipulations:

"It is further understood and agreed that the royalty shall be due and payable on the 20th of each month for all coal mined the preceding month; that whenever the amount of coal mined in any one month does not equal the minimum required according to the terms of this lease that payment must be made for the full minimum, but whenever the amount of coal mined in any month exceeds the minimum required under this lease that then and in that case any excess royalty paid from time to time over and above the royalty on coal actually mined shall apply to pay royalty on coal mined in excess of the minimum for any month or months during the life of this lease."

Appellant's insistence is that the contract contemplates a guaranteed average monthly royalty of $200, and that the royalties paid on coal actually mined during operations, aggregating more than $11,000 in excess of the minimum for that period, should be applied to satisfaction of royalties accruing thereafter. Appellee insists that the minimum monthly royalty must be paid notwithstanding prior payments, and, if in excess of the amount due for coal actually mined, such excess shall stand as an advance payment, to be credited on royalties accruing in later operations in so far as such subsequent royalties exceed the minimum from month to month. Both these forms of min-

ing leases have been considered in other states. In Render v. McHenry Coal Co. (Ky.) 14 S. W. 678, cited by appellant, the lease declared the intent that the mines should yield to the lessor the minimum royalty "one year with another." In Vandalia Coal Co. v. Underwood, 55 Ind. App. 91, 101 N. E. 1047, cited by appellee, the lease declared the sum paid under the minimum clause in excess of amount due for coal actually mined should be treated as "advanced royalty" and be deducted out of any excess accruing "any year or years thereafter." In neither of these cases was the stipulation in the same language as in the lease before us.

[1] But we think the language here employed is not less clear and exact. Thus, the fund to be applied is defined as "any excess royalty paid from time to time over and above the royalty on coal actually mined." This clearly refers back to the requirement that "payment must be made for the full minimum" when that amount of coal is not mined in any month. The wording is equally exact in defining to what this paid in excess shall be applied, viz., "to pay royalty on coal mined in excess of the minimum for any month or months." The conditions defined can only arise by the payment to the lessor of an excess over the royalty on coal actually mined; that is, by payment of the minimum royalty in all events. The application of this paid in excess can only be made when unpaid royalties for coal actually mined show an excess over the minimum for any subsequent month. The contract provides a means by which the lessee may recoup its outlays under the minimum clause by speeding up operations in later months. It permits the lessee to get credit for excess paid in for coal not mined, upon later excess bills accruing for coal that is mined. To apply funds paid to the lessor for coal actually mined to payment of minimum royalties thereafter accruing is to reverse the form of the lease and to contradict its express terms. This we are not free to do.

It is suggested by appellant that the parties in course of operations under the lease have construed the minimum royalty clause as now insisted upon.

[2] It is the law that the construction placed upon a continuing contract by the parties in course of execution, by word or act, may be looked to for the legal construction of terms of doubtful import.

[3, 4] We would say further that if an agreed construction is being put upon the contract by the parties, and a third person is induced to accept an assignment and to assume the duties of the lessee on the faith of such construction, the lessor, knowingly acquiescing therein, would be bound by way of estoppel, even though this agreed construction be at variance with the express terms of the lease. This would be the equivalent of a modification of the terms of an executory contract by mutual agreement.

[5] The only basis for the application of this doctrine here is in the following facts: While the mines were being operated by Black Diamond Coal Mining Company under the same lease, afterwards taken over by defendant, the record shows no royalty paid in July, 1913, and only $50.77 paid in August, 1915. For the entire seven years 1912 to 1918, inclusive, the royalty paid each month exceeded the minimum except the two months above named. The occasion for these omissions is not shown; nor is it shown that the lessor made any agreement or statement touching the same. They were merely not paid according to contract. It further appears that in each case the payments for the next two succeeding months in excess of the minimum more than covered the default mentioned.

The facts shown furnish no basis for an agreed construction of the contract at variance with its terms, nor for an estoppel in favor of this defendant, which succeeded to the position of lessee in October, 1917.

[6] The lease contains the following forfeiture clause:

"Failure to pay the royalty for three consecutive months shall work a forfeiture of this lease and all rights thereunder, providing that written notice shall be given the parties of the second part by the parties of the first part and providing failure to pay said royalty was not due to strikes, labor trouble, accidents, floods or other unavoidable causes which prevented mining of coal during said time."

The mines were shut down because of a strike from May 27, 1920, to February 22, 1921. Appellant insists no minimum royalty is due for that period. It appears the quoted clause deals only with the question of forfeiture. The nonpayment of royalties due to a strike is made an exception to the general option given the lessor to terminate the lease. It follows immediately after the stipulations first quoted. Without extending the concession given in the forfeiture clause beyond its terms, it cannot be construed as a limitation upon the express contract to pay the minimum royalty whether the mines be or be not in operation.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.