JOHN N. STILES *et al. v.* JACOB F. SCHAFFNER

(No. 8560)

Submitted October 20, 1937.   Decided November 23, 1937.

*John B. Wyatt* and *Charles C. Scott,* for plaintiff in error.

*Steptoe & Johnson* and *James M. Guiher,* and *George W. McQuain,* for defendants in error.

HATCHER, JUDGE:

This action was brought at December Rules, 1935, to recover certain gas rentals which had accrued since September, 1919.   A verdict was rendered for plaintiffs for the sum demanded and judgment thereon entered in their favor.

The plaintiffs, as remaindermen, and their mother, as life tenant of land, executed an oil and gas lease thereon in 1913, to C. W. Wally.   The lease required a

quarterly rental of $75.00 for each producing gas well. Such a well was drilled in 1914, and is still producing. Defendant testified that in 1918, Wally "turned over" the well to him and he *assumed control*, as "agent for Wally" under the following agreement: Defendant was to "fix up" the well, and then was "to handle" it and to "have the gas" from it until he should be (a) reimbursed the cost of fixing the well, (b) paid a certain debt owing him by Wally, and (c) repaid certain other debts of Wally "against the well", which defendant then assumed. The sum of these three items amounted to $10,400.00 in 1919. Since that time the defendant has marketed the gas and received all the proceeds therefrom, which on September 3, 1935 amounted to $17,119.27. He claims that Wally "still owes" him, and says: "Whenever I get my money out of it, I will give the well up." In the meantime, no money rentals whatever have been paid plaintiffs. The life tenant died in 1919. Both defendant and Wally left this state in 1919, and were non-residents, continuously, thereafter. Wally died in October, 1935.

The theory which plaintiffs were permitted to submit to the jury was that if defendant assumed control of the gas well in question and received the proceeds therefrom, he became obligated to pay the rentals therefor, irrespective of a written assignment from Wally. The theory which defendant was not permitted to submit to the jury was that if there was no writing by Wally assigning the lease or by defendant acquiring it, he was not responsible for the rentals.

Defendant's charges of error go mainly to the court's rulings on the divergent theories. The rulings are correct. It is settled that a writing is not requisite in such cases. "An assignee of a lease who occupies leased premises under a verbal assignment, void under the statute of frauds, is liable to the lessor for the rent of the premises during the period he is in possession." Jones' Comm. on Ev. (2d Ed.), sec. 1437. Accord: *Indiana Natural Gas & Oil Co.* v. *Duling*, 51 Ind. App. 596, 100 N. E. 96. By defendant's own words there was surrendered to him, for the time being, Wally's entire right to the well and its

proceeds. Under those circumstances, defendant's appropriation of the well *to his own use* created privity of estate between him and the lessors, and bound him to pay the rental on the well. He could not take its benefits, without assuming its burdens. *Comley* v. *Ford*, 65 W. Va. 429, 433-4, 64 S. E. 447; *Stoddard* v. *Illinois Imp. etc. Ballast Co.*, 275 Ill. 199, 113 N. E. 913; *Vandalia Coal Co.* v. *Underwood*, 55 Ind. App. 91, 101 N. E. 1047; *Fennell* v. *Guffey*, 139 Pa. 341, 20 A. 1048; *Mathes* v. *Oil Co.*, 85 Kan. 162, 116 P. 244; Summers, Oil & Gas, Section 183; Thornton Oil and Gas, Willis, sections 336-7, and the many cases cited.

The checks in payment of the gas were made payable to defendant, who indorsed them to Schaffner Brothers, a partnership. An employee of the latter "looked after" the well in question "for Wally", defendant said, and the partnership made a charge therefor against the money received from the gas. Wherefore, defendant's brief contends that Schaffner Brothers had possession of the well, and the privity of estate between defendant and plaintiffs, necessary to make him responsible for the rent, did not exist. He was a member of the partnership, and has been its sole survivor since 1929. The fact that he saw fit to indorse the gas checks to the partnership does not alter his arrangement with Wally. Defendant testified that Wally owed *him*, not the partnership; that the lease was turned over to *him* "to handle" until that indebtedness should be paid; and when that was done, *he* would "give the well up." Consequently, it follows that the *handling* of the well by the partnership was for him and, in law, was his possession.

The brief contends also that defendant was the agent of Wally, not his assignee, and as such agent, not liable for the rent. This contention is supported merely by defendant's phrase that he was Wally's agent. Their arrangement, according to defendant, had none of the essential elements of agency and his *ipse dixit*, alone, would not establish it. There was disinterested testimony, undenied, of his saying that he had bought the lease from Wally. Under this testimony, the jury could have found

that defendant was a purchaser; under his own testimony, the jury could have found that he was an assignee *pro tempo*.

In addition to the money rental, the lease required free gas for domestic use in one dwelling. Since 1917, free gas has been used in two dwellings. Defendant advanced no counterclaim for the gas used in the second dwelling, but contends that gas must have been furnished thereto in lieu of the entire money rental. The only direct explanation of this question was elicited on cross-examination of one of the plaintiffs. He testified that in 1917, casing-head gas was wasting from the well, and that Wally gave him, free, permission to pipe at his own expense this casing-head gas to the second dwelling. An instruction fairly submitted defendant's contention hereon to the jury. We see no error in its adverse finding to him.

The brief arraigns severely the long delay in bringing this action. Plaintiffs say the delay was due to information that the well was not profitable, and also to their ignorance of the whereabouts of defendant and Wally. The sufficiency of this explanation is not an issue. The right of an action in debt, not subject to a statutory limitation nor the doctrine of estoppel, is unimpaired, ordinarily, by mere lapse of time less than twenty years. *Thomas* v. *Holmes,* 142 Iowa 288, 120 N. W. 636; *Warrior Coal & Coke Co.* v. *National Bank,* Ala. Sup., 53 So. 997; *Isenberg* v. *Rainier,* 70 Misc. 498, 127 N. Y. S. 411; Jones, Evidence Civil Cases (3d Ed.), secs. 65 and 67; 1 Am. Juris., subject Actions, sec. 63; 1 C. J., *idem,* sec. 400; 1 C. J. S., *idem,* sec. 128. The continuous absence of both defendant and Wally from the state after 1919 suspended the limiting statutes. (None was even pleaded.) The inaction of plaintiffs caused defendant no injury from which an estoppel arose. Hence the delay was not of legal consequence, and required no explanation.

The brief charges a number of errors to the rulings of the court on the evidence, none of which appears to us to have been prejudicial. The verdict is fully supported by defendant's own testimony.

The judgment is affirmed.

*Affirmed.*