John McD. McIntyre et al., Appellants, *v.* The McIntyre Coal Company, Respondent.

Plaintiffs leased to L. certain coal lands for the term of twenty years. By the terms of the lease the lessee covenanted to mine not less than 75,000 tons of coal per annum for the first five years and 100,000 tons per annum thereafter, and to pay a rent or royalty of thirty cents per ton on all the coal mined, payments to be made quarterly. In case the coal mined in any year fell short of the quantity specified, the lessee covenanted to pay a sum equal to the amount he would have been required to pay if he had mined the full minimum quantity. Then followed this provision. "Provided that if in any year the party of the second part shall mine and carry away more than the proper minimum quantity for such year, such excess or so much thereof as may be necessary, may be set off against the deficiency of any other year or years within the same division of the term hereby demised; so much of said excess as is applied to make up such deficiency having been paid for shall not be paid for again." In an action to recover rent or royalty alleged to be due for a quarter, during which no coal had been mined, it appeared that during the preceding years of that period or division of the term the defendant, assignee of the lessee, had mined and paid the royalty on an excess over the minimum quantity specified. *Held* (Ruger, Ch. J, and Rapallo, J., dissenting), that the lessee was entitled to set off sufficient of the excess to make-good the deficiency; that he was not required to mine continuously during each year of each division of the term the minimum quantity specified, nor was the application of an excess limited under the terms of the lease to a deficiency occurring in the preceding years; but that the lessee had the right to mine during the first year of each division and pay for the

whole amount required for that period; and, in case it had done so unless he mined an additional quantity, would have been discharged from liability.

(Argued December 13, 1886; reargument ordered January 18, 1887; reargued March 10, 1887; decided April 19, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department entered upon an order made May 4, 1886, which affirmed a judgment in favor of defendant entered upon the report of a referee.

The nature of the action and the material facts are stated in the complaint.

*John E. Parsons* for appellants. The defendant was bound under the lease to proceed continuously in working the mine and during each year to mine at least 100,000 tons. (*Curtiss* v. *Howell*, 39 N. Y. 211; *Sharp* v. *Wright*, 28 Beav. 150.) No circumstance of unprofitableness of working will excuse the non-performance of this obligation. (*Wharton* v. *Stoutenberg*, 46 N. J. L. Rep. 157; *Clark* v. *Glasgow Co.*, 1 McLean [H. L. Cas.] 668; *Gilmour* v. *Ontario Co.*, 86 N. Y. 455; *Phillips* v. *Jones*, 9 Sim. 519; *Gowan* v. *Christie*, L. R. 2 Scotch App. 273.) The burden was upon the lessee to excuse itself from the payment of rent. (*Gifford* v. *First Presb. Soc. of Syracuse*, 56 Barb. 114; *Marvin* v. *Stone*, 2 Cow. 806.) If there was a deficiency for the year in question, the right to set off could not exist until a succeeding year. There is no occasion for a new trial. (*Burkhardt* v. *McClellan*, 1 Abb. Ct. App. Dec. 263; *Edmonston* v. *McLoud*, 16 N. Y. 543; *Guernsey* v. *Miller*, 80 id. 181; *Capron* v. *Thompson*, 86 id. 418.)

*George L. Stedman* for appellants. The leading purposes of the lease are to be sought for and enforced. (*Curtiss* v. *Howell*, 39 N. Y. 211; *Gilmore* v. *Ont. Iron Co.*, 86 id. 455.) Modifications in a contract should be construed so as to give effect to both the main purpose and the modification, but a modification should not be so construed as to super-

sede the main purpose. (*Nelson* v. *Odiorne*, 45 N. Y. 489, 493 ; *D. L. & W. R. R. Co.* v. *Bowns*, 58 id. 573.) Effect must be given to every part of a contract if reasonably practicable. (Chitty on Cont. 7 ; *Westcott* v. *Thompson*, 18 N. Y. 363, 366.) Where two different constructions are possible, that is to be chosen which upholds and does not destroy the instrument. (*Coyne* v. *Weaver*, 84 N. Y. 386.) The lease of twenty years is not to be shortened by the wilful, intentional act of the lessee, nor is a clause which was evidently inserted to provide against contingencies to be used to protect such wilful action. (*Booth* v. *Cleveland Co.*, 74 N. Y. 15 ; *Watson* v. *O'Hearne*, 6 Watts [Pa.] 362.)

*E. Countryman* for respondent. Rent is a fixed sum in lieu of royalty and is to be paid in any event, while royalty is a contingent sum per ton for all coal mined where there is no definite quantity required, or above the minimum quantity specified in the lease. (*Smith* v. *Morris*, 2 Browns, Ch. 311 ; *Phillips* v. *Jones*, 9 Simons, 519 ; *Wharton* v. *Stoutenberg*, 46 N. J. L. 157.) There is no room for implication in this case because the parties have made express provision in the lease. (*Vanderkorr* v. *Vanderkorr*, 11 Johns. 122 ; *Burr* v. *Stenton*, 43 N. Y., 462, 464 ; *Rogers* v. *Hoosack's Ex'rs*, 18 Wend. 347 ; *Witty* v. *Mathews*, 52 N Y. 516 ; *Aspdin* v. *Austin*, 5 Q. B. 671, 684 ; *Standen* v. *Christmas*, 10 id. 135 ; *Lewis* v. *Fathergill*, 5 Ch. App. 103 ; *Mallory* v. *West S. etc., R. Co.*, 3 J. & S. 175, 181 ; *Lynch* v. *On. Salt Co.*, 64 Barb. 558, 560 ; *Todd* v. *Stambough*, 37 O. St. 469.) As the full term is expressly limited to twenty years and the minimum quantity of coal to be mined during the whole term is also specified, it is apparent that the parties did not contemplate a necessary exhaustion of the ore during the term. (*Bishop* v. *Goodwin*, 14 M. & W. 260 ; *Gilmore* v. *Ont. I. Co.*, 86 N. Y. 455.) The lessee merely covenanted that if, or when he does work the mine under the lease, he will do so in a safe, skillful and workmanlike manner. (*Wheatley* v. *West, etc., Coal Co.*, 9 Eq. Cas. 538, 553 ; *Lewis* v. *Fathergill*, 5 Ch. Ap. 103 ;

*Mallory's Case*, 3 J. & S. 181.) The plaintiffs can only recover in this action for rent due and unpaid under the lease. This is not an action to recover damages for a breach of a covenant to work the mines continuously during each and every year. And such damages cannot be recovered in an action for rent. (*Smiley* v. *McLauthlin*, 138 Mass. 363; *Reed* v. *Beck*, 66 Ia. 21; *Macbryde* v. *Weeks*, 22 Beav. 533; *Witty* v. *Matthews*, 52 N. Y. 516; *Aspdin* v. *Austin*, 5 Q. B. 671, 684; *Standen* v. *Christmas*, 10 id. 135; *Lewis* v. *Fathergill*, 5 Ch. App. 103; *Mallory* v. *W. Shore, etc., R. Co.*, 3 J. & S. 175, 181; *Burr* v. *Stanton*, 43 N, Y. 462.) There is no covenant on the part of the lessee to work the mines continuously. Such a covenant is necessary, and must be explicit in terms, before the lessee can be held liable for not working the mines. (*Jegon* v. *Vivian*, L. R. 6 Ch. 742, 757; *Wheatley* v. *Coal Co.*, L. R. 9 Eq. 538; *James* v. *Cochrane*, 7 W. H. & G. 170.) The court cannot, by construction, defeat the express stipulation of the parties, and it ought not to endeavor to make a different contract than the parties have made for themselves. (*Jegon* v. *Vivian*, L. R. 6 Ch. 754, 758; *Bowes* v. *Shand*, L. R. [2 App. Cas] 455, 463, 465, 473, 474, 476, 478, 485, 486.)

DANFORTH, J. This case has been twice argued; the second time at the request of the court in order that a conjecture, not presented by counsel, but prompted by an examination of the lease, and creating some doubts as to the rights of the parties might be called to their attention. The appellants have, however, given the suggestion very little support. They have indeed failed to show that if adopted it would express the intention of the parties, and we find nothing in ths points of the plaintiffs which indicates error in the conclusion reached by the trial judge, as to the true construction of the covenant for alleged breach of which the action was brought. That was the only question before him, and is the one to which the appeal is directed.

It appears that on the 1st day of October, 1869, the plaintiffs demised to Jervis Langdon certain coal lands for the term

of twenty years from July 1, 1870; that the defendant acquired his rights and took his place. The complaint states that on the 1st of January, 1885, $7,500 rent for the quarter ending on that day became due, and this action was brought for its recovery. The answer admits the demise, but alleges payment according to the covenant of the lessee. So far as now material, the lease contains a grant and demise of the premises to the lessee, in consideration of which, as therein expressed, he covenants and agrees that he will mine and carry away from the coal lands not less than 75,000 tons of coal per annum for the first five years of the term, beginning on the 1st day of July, 1870, and will mine and carry away not less than 100,000 tons of coal per annum for the next fifteen years, and will pay rent or royalty of thirty cents per ton for every ton of coal mined and carried away during the full term.

"The payment of the rent or royalty to be made quarter-yearly on the first days of October, January, April and July, in each year, from the commencement of the term." Then follow these words: "In case the quantity of coal mined and taken away in any year of the said term, shall fall short of the proper minimum quantity above named, he will pay as rent for such year, a sum of money equal to the amount he would have been required to pay under this covenant, if he had mined the full proper minimum quantity, provided that if in any year the party of the second part shall mine and carry away more than the proper minimum quantity for such year, such excess, or so much thereof as may be necessary, may be set off against the deficiency, of any other year or years, within the same division of the term hereby demised. So much of said excess as is applied to make up such deficiency, having been paid for, shall not be paid for again."

The defendant alleges that during the first period or division of the term, viz.: Five years from July 1, 1870, to July 1, 1875, it took away from the demise premises an excess of 322,058 tons above the 375,000 tons required by the lease, and paid the full royalty; that thus far during the second

period it has mined 220,679 tons over the full amount required for the whole of the second period or division of fifteen years mentioned in the lease, and paid the full royalties thereon, and has thus paid all the rents and royalties for the whole remaining period of the lease.

Upon trial before the court the facts alleged by the defendant were in substance found to be true, and the learned trial judge held " that under the terms of the lease the defendant has the right to set apart from the excess of coal mined during any one year of said second period of said lease sufficient to make good any deficiency in any subsequent year of said second period, and having elected so to do, has the right to set apart from the excess of the first year of said second period, to wit, the year ending July 1, 1876, the amount of 25,000 tons to make good a like deficiency in the amount mined during the period from October 1, 1884, to January 1, 1885, the period to recover rent for which this action is brought," and dismissed the complaint. It was his opinion that the provision for an annual mining of " not less than 100,000 tons of coal per annum " for fifteen years, taken separately, was not satisfied unless that amount was annually produced, but he held that the other provision permitted mining in excess of that amount in any year, and an application of that excess to the royalties otherwise unearned, but still due in subsequent years when there happened to be a deficiency in production. It is evident that under this construction the lessee might go on and mine during the first year of each division the whole amount required for that period.

On the other hand the claim is made in behalf of the lessors, and this is their principal contention, that the mining must be continuous during each year of each division of the term, and if there should be an excess it could be applied only upon the deficiency occuring in some other preceding year. In other words that the lesee, whether it mines or not, must pay in each year thirty cents per ton on at least 100,000 tons, or $30,000 annually, " but if (as was suggested in the opinion which led to the reargument) it has to pay for any deficiency

as rent, the amounts so paid are to be regarded as royalties paid and are to be set off against royalties on any subsequent excess over the 100,000 tons, so that the lessee shall not be compelled to pay again a royalty which has once been paid."

Again it is said in support of this view: "When it has paid for a deficiency, it becomes entitled to take out an equal amount of excess without paying." In other words, as the case is put in argument, the deficiency must have occurred before the excess is produced. It is argued that the provision means a past deficiency and a future excess. I cannot reach that conclusion and am constrained to agree with the defendant's view.

*First.* It accords with the literal meaning of the provision. If in *any* year of the terms you carry away *more* than the 100,000 tons, such excess, or so much "of such excess" as may be necessary, may be set off against the deficiency of any other year or years within the same division.

These permissive words "If in *any* year of the term," of course must apply as well to the first year of each division as to the other years, or as to the last year. It is conceivable that there might be produced 150,000 tons, an excess of 50,000 tons, in the first year of the second term, and in the second year of that period there might be produced only 50,000 tons, leaving a deficiency in the second year of 50,000 tons. By the terms of the lease the excess of the first year must be paid for at the time the royalties for the minimum of 100,000 tons are paid, that is the whole quantity mined, 150,000 tons, must be paid for within the year. During the second year, notwithstanding the deficiency, the royalties for 100.000 tons must be paid, as according to the appellants' contention the excess of the first year cannot be set off against the deficiency of the second year. Yet the excess has been paid for, and, as the condition runs, shall not be paid for again.

*Second.* The parties having restricted the general language of "any year," by applying it to any other year or years "within the same division," appear to have had the question

of limitation in mind, and no further restriction should be implied. Yet the appellants' contention would reduce the years of grace in one division to four years, and in the other to nine years, and make it read as if it said "if in any year except the first year of each division, the lessee shall mine and carry away an excess," then, etc.

*Third.* The object of the provision was to provide for anticipated or possible "excess." That is the dominant word. It must be paid for because the covenant of payment requires each ton mined and carried away, no matter how great, the production, to be paid for quarterly from the commencement of the term. But it was also in the minds of the parties that a deficiency might occur. This might arise from various causes, voluntary and involuntary, and so that was provided for; the lessee may apply the excess, say the parties, not only upon the deficiency of any other, that is any other "one year," but of any other "years," no matter how many so they all come within one division.

Again, I think the contention of the appellant requires us to change the words used by the parties in another respect. The lessee is to pay "the rent or royalty of thirty cents per ton for every ton of coal mined and carried away, but in case the quantity mined and carried away "in *any year* of the *term*, shall fall short of the proper minimum quantity, the lessee shall "— do what? Why, "pay to the lessor a *sum of money* equal to the amount he would have been required to pay if he had mined the full proper minimum quantity." Then comes the proviso as to the excess, and then the words "so much of said excess having been paid for, shall not be paid for again." The appellant reads it as if it said "the previous deficiency" which has been paid for "in pursuance of the covenant to pay for deficiencies." I do not see how this can be allowable when the express language of the covenant is, "so much of said *excess* having been paid for, shall not be paid for again."

It should be observed that nowhere in the lease do the parties provide for rent, payable as such in money, and at a fixed sum,

except upon default of the lessee in mining and taking away the quantity of coal provided for, and then the sum to be paid is measured by the tax or royalty which would, except for that default, have been paid to the lessor upon the produce of the mine. This is opposed to the controlling idea of the appellant which seems to be that the lease imposed an obligation upon the lessee to produce continually in working the mine, and this is presented in various forms. Thus it is said by their counsel : (1.) "That the lease nowhere provides that the lessee may in any year altogether cease to mine." (2.) That the lease provides "That the lessee shall and will prosecute and carry on the said mining operations in a skillful and workmanlike manner." (3.) "That the lessee binds himself absolutely to mine at least 100,000 tons during each of the fifteen years."

The learned counsel nowhere finds in the lease an express covenant to work the mine continuously, but seeks from these provisions to imply one. I can find no authority for such implication, nor power on the part of the court to interpolate such a covenant into the contract which the parties deliberately made, and in regard to which no omission or mistake is pretended. Certain things the lessee must do ; certain other things the lessee must not do. The lease contains injunctions and prohibitions, agreements to do and agreements not to do. But the lessee is neither required to work the mine continuously, nor does he agree to do so. Such an obligation cannot in support of an action like this be inferred from the agreement to carry on the mining operations, "in a safe, skillful and workmanlike manner," for the lease provides the penalty for omitting to do so, viz. : accountability to the lessors for any loss or damage which they may sustain in these respects, and declares that it shall be ascertained by arbitration, or action for damages, or termination of the lease.

As to the other provisions referred to, the deduction sought to be drawn from them is repelled by an express provision for what is called in the English cases, (*Jegon* v *Vivian*, 6 Ch. App. 742; *Wheatley* v. *Coal Co.* L. R. 9 Eq. 538), a

dead or sleeping rent, that is a rent which must be paid whether the mine is worked or not. This is found in the clause already quoted, but which may be repeated in this connection to show that the parties contemplated not a continuous working of the mine, but a possible discontinuous working of it, viz.: " In case the quantity of coal mined and taken away by the party of the second part, in any year of the said term, shall fall short of the proper minimum quantity above named, the party of the second part shall and will pay to the parties of the first part, their heirs, executors, administrators or assigns, as rent for such year, a sum of money equal to the amount he would have been required to pay under this covenant, if he had mined the full minimum "quantity." Let us suppose that at the very moment after the execution of the lease, the lessee had seen fit to let the land lie idle, preferring to pay to the lessor in money a sum equal to the aggregate amount he would have been required to pay if he had for each one of twenty years mined the full minimum quantity of coal, can it be thought that at any time thereafter he could be called upon for royalty or rent? Certainly not. The lease secures payment by royalty as rent, and then in default of royalty measured by production, stipulates for rent in money. The whole intention of the parties was to provide for a certain amount of rent, and when that is paid, no matter when it is paid, the obligation of the lessee ceases. The remaining sentence of the same provision gives equal latitude and relief to the lessee when he has paid so much royalty on coal mined as will cover the rent called for, whether the royalty is paid in one year, or in different years, having regard only to that division into periods which the parties themselves arranged for. This construction works no injustice to the lessors. They have received the rent, which was made payable whether the coal was mined or not; it has been paid in one of the two ways bargained for; if more was expected, other provisions should have been inserted in the lease. So far as that instrument discloses the intention of the parties it has been fully carried out, and the plaintiffs

properly held to have no cause of action. A different result would lead to a double payment.

The complaint therefore was necessarily dismissed, and the judgment appealed from should be affirmed.

Rapallo, J. (dissenting.) The construction of the lease contended for on the part of the defendant, is that, in effect, it imposed upon the lessee an obligation merely to mine or pay for an average of 100,000 tons of coal per annum during the last division of the term of his lease, and that whenever he had mined more than at that rate he had the right to suspend mining or paying, until the average quantity of coal mined during the preceding years was reduced below 100,000 tons per annum. So that if, during the first five years of the second division of the term, he should have mined 1,500,000 tons in the aggregate, the lessee would be entitled to hold the demised premises during the remaining ten years without mining any more coal unless he chose, or paying any rent or royalty. The mines, and the costly improvements there erected at the expense of the lessors, might remain idle and unproductive, no one but the lessee having the right to operate them. On the other hand the plaintiffs claim that the lessee, according to the true intent and proper construction of the lease, was to pay thirty cents per ton for all the coal he should mine, even though it should exceed 100,000 tons per annum, and at the same time was bound to pay, as a minimum rent, during each and every year, thirty cents per ton on at least 100,000 tons, even though he should in fact mine less than that quantity during the year, and that the intention of the contract was to secure to the plaintiffs a rental, in any event, of at least $30,000 in each and every year of the term, and at the same time to secure compensation at the rate of thirty cents per ton for all the coal the lessee should remove from the mines, if he should remove more than the minimum quantity.

The lease, read without the proviso which gives rise to the dispute, clearly expresses the intent claimed by the plaintiffs. The lessee covenants that during the second division of the

term, viz. : Fifteen years after the expiration of the first five years, he will mine and carry away from the demised coal lands, not less than 100,000 tons of coal per annum, and that he will pay to the lessors rent, or royalty, of thirty cents per ton for every ton of coal mined and carried away during the full term of the lease, and that the payment of this rent, or royalty, shall be made quarterly on the first days of October, January, April and July, in each year from the commencement of the term.   And he further covenants, that in case the quantity of coal mined by the lessee in any year of the said term shall fall short of the proper minimum quantity above named, the lessee will pay to the lessor, as rent for such year, a sum of money equal to the amount he would have been required to pay if he had mined the full minimum quantity. Thus far the lease is free from any ambiguity, and its construction admits of no doubt.   The lessee covenants to pay thirty cents for every ton he shall mine, whatever the number of tons may be, and further that the number shall not be less than 100,000 tons in each year, and if in any year it should be less than the prescribed minimum, then that he will pay as rent for such year a sum of money equal to thirty cents per ton on 100,000 ton, viz. : $30,000, payable quarterly.   Under this covenant he clearly bound himself to pay this minimum rent in any year during which he mined less than 100,000 tons, whatever amount he might have mined and paid for during the preceding years.

But there was still a contingency unprovided for.   There might be a deficiency during some year of the term, of say 50,000 tons, in the number of tons mined, but under this covenant the lessee would have been obliged to pay for 100,000 tons.   The lessee would therefore have paid a royalty upon 50,000 tons deficiency, though he never had the coal, and the lessors would have received a royalty upon 50,000 tons which still remained in their mines

The depletion of the mines was an injury for which the lessors were compensated by the royalty reserved in the lease. The value of the coal lands demised was permanently dimin-

ished in proportion to the amount of coal removed.   But at the same time the tract was large, nearly 2,500 acres.   Upwards of $236,900 had been expended out of the funds of the lessors, in machinery and improvements.   The lessee obtained the possesson of the coal lands and mines and improvements for a long term of years, and the owners naturally desired to secure to themselves an adequate rental during each year of the term. This they did by requiring that the lessee should mine at least 100,000 tons each year.   If he mined only 50,000 tons he covenanted to pay in the shape of rent, a royalty upon the deficiency of 50,000 tons, which he had never removed from the mines.   But in case he should, in any other subsequent year, mine and remove, say 50,000 tons in excess of the stipulated 100,000, he might still, under the terms of the lease, be deemed bound to pay the royalty of 30 cents on every ton of coal mined during that year, which would have been unjust, because he had already paid a royalty upon a deficiency of 50,000 tons of coal which still remained in the mines, and when he should take them out he ought to have credit for the deficiency which had thus been paid for.   Some further clause was, therefore, necessary to protect him against a double payment of royalty on the same amount of coal, viz. : first, as a deficiency, and again, as a royalty for taking out the coal.

The question now is, whether the proviso out of which the present controversy has arisen, was not intended to meet the difficulty, and supply the omission above suggested, and whether, if it is fairly capable of that construction, it should not be preferred to one which would be a material departure from the scheme indicated by the preceding part of the lease and repugnant to the language of the preceding covenants.

The language of the proviso is somewhat obscure, but light is thrown upon it by the explanatory sentence with which it concludes.   The language of the proviso is : " Provided that if, in any year, the party of the second part, shall mine and carry away *more* than the proper minimum quantity for such year, such excess, or so much thereof as may be necessary, may be set off against the deficiency of any other year or

years within the same division of the term hereby demised. So much of said excess *as is applied to make up such deficiency, having been paid for, shall not be paid for again.*"

I think it plain that the excess here spoken of is an excess arising *after the deficiency has occurred, and has been paid for.* This excess in such a case, instead of being paid for, shall be set off against the previous deficiency, which *has been paid for.* This is plain from the concluding paragraph "so much of said excess as is applied to make up such deficiency, *having been paid for* (*i. e* having been paid for in pursuance of the covenant to pay for deficiencies) shall not be paid for again." How could it possibly be ascertained how much of the excess in any year was necessary to make up the deficiency in any other year, and how could the necessary amount be so applied, and thus have *been paid for*, unless the deficiency had occurred before the excess was produced? It must be that in referring to the deficiency "in any other year," the parties meant the deficiency in any other preceding year.

This construction harmonizes all parts of the agreement. It requires the lessee to pay thirty cents per ton on all the coal he takes out in every year, and it secures to the lessor a minimum rental of thirty cents on 100,000 tons for each year, but if the lessee has to pay for any deficiencies as rent, the amounts so paid are to be regarded as royalties paid, and are to be set off against royalties on any subsequent excess over the 100,000 tons, so that the lessee shall not be compelled to pay again, a royalty which has once been paid. When he has paid for a deficiency he becomes entitled to take out an equal amount of excess without paying, but there is nothing in the clause which purports to excuse him from paying for a *deficiency* in any year  There is no provision for reducing payments for deficiencies by off-set, but only for reducing payments for excess by so much of the excess in any year as shall be applied to make up deficiencies which have been paid for.

These views would lead to a reversal of the judgment of the General Term and a new trial.

All concur with DANFORTH, J., except RUGER, Ch. J., who concurred with RAPALLO, J., dissenting, and PECKHAM, J., taking no part.

Judgment affirmed.