Sydney Bevin and Another, Appellants, *v.* Henry Steers Sand & Gravel Company, Inc., Defendant, Impleaded with Henry Steers, Inc., Respondent. (Actions Nos. 1, 2 and 3.)

Second Department, December 3, 1926.

Landlord and tenant — construction of lease — actions to recover rent — lease of sand and gravel bed for ten years with privilege of removal of sand and gravel — lease provides for minimum rental based on sand and gravel removed at ten cents per cubic yard — minimum rental must be paid without regard to whether tenant removes any sand or gravel — excess payment over minimum made in any one year cannot be applied to later years — lease provided for cancellation on three months' notice in case of existence of clay beds within certain distance from surface — exhaustion of sand and gravel did not authorize cancellation — defendant is liable at least for minimum rental until three months after service of notice — one defense asserts existence of clay beds — causes of action for rent accruing after three months from service of notice are severed and new trial granted.

These are actions to recover rent alleged to be due under a lease of a sand and gravel bed, which lease contains a provision authorizing the removal of sand and gravel by the tenant. The lease fixes a minimum rental of $6,000 per year based upon the sand and gravel removed at the rate of ten cents per cubic yard, but provides also that the minimum rental shall be paid notwithstanding 60,000 yards of sand and gravel are not removed in any one year, and that in case more sand and gravel is removed the tenant shall pay ten cents per cubic yard for all in excess of 60,000 cubic yards. The term of the lease is ten years with privilege of cancellation in case extended beds of clay are found upon the leased property within fifty feet from the natural surface of the ground, upon which beds there is not twelve feet or more of sand and gravel. Before the

lease expired, defendant, claiming that the sand and gravel were exhausted, abandoned the premises.

The lease was not a sale of sand and gravel in bulk to be paid for at the rate of ten cents per cubic yard, but was a lease of the ground with privilege of removal of the sand and gravel with a minimum rental of $6,000 per annum, regardless of whether or not the tenant removed 60,000 cubic yards, and, therefore, even though, as appears in the record, more than $6,000 was paid in rental during any one year, based on the number of cubic yards removed, the excess payment over the minimum rental cannot be applied on the rental for succeeding years.

The tenant did not have the right, under the lease, to abandon the premises as soon as the sand and gravel were exhausted, and to cancel the lease, but it had the right to cancel the lease only in case extended beds of clay were discovered within a certain distance from the natural level of the land.

Under the terms of the lease, the cancellation, for the reason specified therein, would not be effective until after the lapse of three months from the date of the notice of cancellation, and, therefore, as to the first action and as to the first cause of action in the second action, which were to recover rent prior to the expiration of three months after the notice of cancellation was given, the plaintiff is entitled to recover.

While the notice of cancellation did not specify that the lease was being cancelled because of the existence of clay beds, still, in view of the fact that the defendant in one of its defenses asserts the existence of such beds, causes of action for rent accruing after the lapse of the three-month period are severed and the defendant is given a new trial as to the issues arising thereon.

KAPPER and JAYCOX, JJ., dissent, with memorandum.

APPEAL by the plaintiffs, Sydney Bevin and another, from a judgment of the Supreme Court in favor of the respondent, entered in the office of the clerk of the county of Suffolk on the 12th day of January, 1926, upon the dismissal of the complaint at the close of the plaintiffs' case.

*Sidney W. Davidson* [*Heber Smith* and *Leslie D. Dawson* with him on the brief], for the appellants.

*Charles L. Woody,* for the respondent.

KELLY, P. J. The learned trial justice said in granting the nonsuit at the end of plaintiffs' case: " I am very clear that there is no cause of action here, and the motion should be granted."

From my point of view the action is to recover installments of rent alleged to be due under a written lease of certain beach property on Eaton's Neck in Suffolk county. There is no dispute about the making of the lease or about defendant's entry on the property. The lease was for two certain tracts of land shown on a map attached to the instrument. It was dated December 18, 1916. The property was leased to the defendants " for the purposes of a sand and gravel business only." The term was for ten years from June 1, 1917, " at a minimum rental of Six Thousand Dollars per year, based upon the gravel and sand removed therefrom as

follows, viz: Ten cents per cubic yard for all gravel and sand removed, the tenant to remove and pay for, or pay for without removal, sand and gravel so that the minimum rental or royalty shall be Fifteen Hundred Dollars for each three months of each current year, the rental or royalty for each three months to be paid on the 20th day of the succeeding month at the place of residence of said Leander A. Bevin, at Northport aforesaid, or such other place within fifty miles of New York City as he shall in writing designate, The Intention Being that said tenant shall pay at least a minimum rental of Six Thousand Dollars during each year by paying at least Fifteen Hundred Dollars of the rental for each three months of each current year, subject to cancellation hereof as hereinafter provided. Operations under this contract to begin June 1st, One Thousand Nine Hundred and Seventeen." I am free to say that I can discover no ambiguity in the terms of the instrument so far.

It is further provided: " Said parties Further Covenant and Agree that in the event that extended bed or beds of clay be found upon the leased property within fifty feet of the natural surface of the ground, upon which bed or beds there is not twelve feet or more of sand and gravel, or sand or gravel, with the result that a deposit of sand or gravel of at least twelve feet in thickness is not available for the party of the second part, that in that event the party of the second part, its successors and assigns, shall be privileged to cancel this lease upon three months' notice in writing, and upon such completed cancellation the future obligations of both parties hereto shall forthwith terminate; provided however that if there be upon the property leased an available deposit, over twelve feet in thickness of sand and gravel, or sand or gravel, the lessee shall be obligated to take the same and shall not be permitted to cancel this lease."

Leander A. Bevin, the lessor, died March 24, 1919, leaving a will in which he devised the premises in equal shares to his two sons, the plaintiffs. The lessee did not commence excavating until April 1, 1919; the term of the lease began June 1, 1917. Pursuant to the terms of the lease the defendant paid the minimum rent of $6,000 per annum during this period of inaction, viz., $1,500 for each quarter from June 1, 1917, to January 1, 1919. After excavation commenced, the amount of gravel removed became important, because if the number of cubic yards of gravel and sand removed exceeded 60,000 yards, the lessor was entitled to 10 cents per cubic yard on the excess sand and gravel, and 60,000 yards at 10 cents a yard would equal the minimum rental of $6,000 per year which the lessee was to pay whether he removed sand or not.

During 1919 the lessee removed 29,000 cubic yards of sand and gravel, and paid the minimum rent of $6,000 per year. During 1920 the lessee removed 91,800 cubic yards of sand and gravel, which at 10 cents per cubic yard called for a payment of $9,180, which was paid and which was in excess of the minimum rental. And in 1921, 1922 and 1923 the lessee removed more than 60,000 cubic yards in each year, and it paid at the rate of ten cents per cubic yard in each year.

On December 13, 1923, the defendant Henry Steers, Inc., successor of the original lessee, wrote to the attorney for the plaintiffs informing him " that unless something unexpected develops, we will finish the excavation of all the sand and gravel on the Bevin property, within the lines as specified in our contract, within the next ten days or two weeks; " and on December 28, 1923, the defendant wrote another letter to the attorneys for the plaintiffs, stating that the sand and gravel on the premises covered by the lease had been exhausted.

On May 21, 1924, the attorneys for the lessee, acting in its behalf, gave formal notice in writing to the plaintiffs, canceling the lease. The lease provided (*supra*) that in certain contingencies the lessee might cancel the lease " upon three months' notice in writing." Under this covenant, if the facts existed warranting the cancellation of the lease by the lessee, the cancellation notice in the letter of May 21, 1924, would have become effective August 21, 1924.

No sand or gravel was removed from the demised premises by the lessee after January, 1924, and no payments of rent were made after February 20, 1924, when the defendant made the payment due on January 20, 1924, partly in cash and partly by note.

Three separate actions were commenced by the plaintiffs to recover the minimum quarterly rentals falling due after January 20, 1924, viz.:

Action No. 1 was commenced by service of a summons and complaint on October 3, 1924. This action embraced the quarterly installments of rent, each in the sum of $1,500, which became due on April 20, 1924, and July 20, 1924, respectively. The defendant Henry Steers, Inc., appeared and served an answer on November 3, 1924. Action No. 2 was commenced by service of a summons and complaint on August 13, 1925. This action embraced the quarterly installments of rent, each in the sum of $1,500, which became due on October 20, 1924, January 20, 1925, April 20, 1925, and July 20, 1925, respectively. The defendant Henry Steers, Inc., served an answer on or about September 10, 1925. Action No. 3 was commenced by service of a summons and complaint on October 24, 1925. This action embraced the quarterly

installment of rent in the sum of $1,500 which became due on October 20, 1925. The defendant Henry Steers, Inc., served an answer on November 14, 1925.

The defendant in the case at bar, Henry Steers, Inc., is the successor in interest of the lessee Henry Steers Sand and Gravel Company, Inc. The latter corporation did not appear or answer. The complaint in action No. 1 is at folio 13 and the answer is at folio 70. The pleadings in the other two actions are not in the record. The three actions were tried together, and the legal questions involved may be considered on the pleadings in action No. 1 and the record of the proceedings at the trial.

The answer of the defendant Henry Steers, Inc., in action No. 1 admits the allegation in the complaint that Leander A. Bevin, the original lessor, was in his lifetime the owner of the tract of beach and meadow land at Eaton's Neck shown on the map. It admits that defendant's predecessor entered into and executed a lease, copy of which is attached to the complaint. It admits that the lessee entered into possession of the demised premises. It denies the allegation in paragraph 7 of the complaint of the legal conclusion that the installments sued for are due. For a second separate defense it alleges:

" XI. On and prior to December 18, 1922, there remained on the said premises no sand and gravel or sand or gravel that could be excavated or removed therefrom under and according to the terms of the said lease.

" XII. Thereafter and on or about the 18th day of December, 1922, the plaintiffs and defendant entered into an agreement modifying the aforesaid lease, a copy of which agreement is attached to the complaint and marked Exhibit D, whereby the plaintiffs placed at the disposal of the defendant additional territory from which to excavate sand and gravel.

" XIII. Thereupon, in pursuance to the terms of the aforesaid lease, and the agreement modifying the same, the defendant continued excavating and removing the sand and gravel from the said premises until the month of December, 1923, when defendant notified the plaintiffs that the sand and gravel was being exhausted from the said premises.

" XIV. On and after the 26th day of December, 1923, there remained on the said premises no sand and gravel or sand or gravel that could be excavated or removed therefrom under and pursuant to the terms of the said lease and the agreement modifying the same.

" XV. Immediately after the said sand and gravel was exhausted from the said premises, the defendant removed all its plant, machinery, material and workmen from the said premises and gave

up possession and control thereof to the plaintiffs and wholly abandoned the same.

" XVI. Defendant duly notified plaintiffs that all of the sand and gravel had been excavated and removed from the said premises and that the said premises were totally exhausted of sand and gravel.

" XVII. Prior to the commencement of this action and in accordance with the terms of the aforesaid lease and the agreement modifying the same, the defendants, Henry Steers Sand & Gravel Company, Inc., and Henry Steers, Inc., paid to Leander A. Bevin and the plaintiffs the full amounts due and owing to the plaintiffs for all sand and gravel removed from the said premises or remaining on the said premises unremoved."

For a third separate defense, after again admitting the execution of the lease Exhibit B, the defendant goes on to allege: " and the said minimum royalty of $6,000 per year was provided for in the said lease in order to compel the said defendant to use due diligence in commencing operations and in removing the sand and gravel under and pursuant to the terms of said lease." This *reason* for making the covenant in question is, of course, not contained in the written lease executed and delivered under seal. Apparently it is introduced as a basis for the claim now advanced by defendant that the minimum rental of $6,000 per year for each of the ten years in the term described in the lease, was paid when the landlord had received more than $60,000 in rents and royalties and that the defendant has paid all the rent due under the lease. It is said in defendant's points on appeal: " It is conceded that $60,000 was the minimum for the entire term of ten years. There has been paid $85,358.67. The royalties amount to 730,200 cubic yards, or $73,020."

There is no dispute in the record as to the amount of sand and gravel which had been excavated prior to December 26, 1923, the date at which defendant alleges in the answer that no sand or gravel remained on the premises for excavation, on which date defendant · alleges that it " gave up the possession and control thereof [of the demised premises] to the plaintiffs and wholly abandoned the same."

But the lease was for ten years from June 1, 1917, expiring May 31, 1927, and it contained the express covenant on the part of defendant's predecessor, " The intention being that said tenant shall pay at least a minimum rental of Six Thousand Dollars during *each* year by paying *at least* Fifteen Hundred Dollars of the rental *for each three months of each current year*, subject to cancellation hereof as hereinafter provided." The provision for cancellation of

the lease depended on the existence of the facts expressly set out in the lease (*supra*).

At the opening of the trial the plaintiff moved for judgment on the pleadings in action No. 1, on the ground that the defendant having failed to cancel the lease, it was in full force during the months ending February 29, 1924, covered by the first cause of action, and during the three months ending May 30, 1924, involved in the second cause of action. It will be remembered that the formal notice of cancellation was not given until May 21, 1924, and plaintiffs contend it would not become effective in any case until August 21, 1924. The motion was denied over exception by plaintiffs. The plaintiffs then offered formal proof as to the making of the lease and the payments received. As already stated, there is no dispute about these facts. The amounts paid by defendant for minimum rental and royalties are stipulated by the parties. They aggregate $85,358.86. Of course, there is no dispute that the amount paid exceeds $60,000 — the aggregate minimum rental reserved of $6,000 per year for each of the ten years specified in the lease.

At the conclusion of plaintiffs' formal proof they rested, renewing their motion for judgment on the pleadings as to the rentals falling due before August 21, 1924, the date at which the three months' notice of cancellation became effective, provided the conditions existed authorizing such cancellation. The motion was denied over plaintiffs' exception. I think the learned trial justice was wrong. It will be noted that there is no provision in this lease which gives the tenant the right to claim credit for any overpayment in any one year, as against rents subsequently due for a succeeding year. The landlord was entitled, *first*, to a minimum rental of $6,000 a year for each of the ten years in the term. This minimum rental was to be paid whether the tenants removed sand and gravel or whether they did not, by express language in the lease. In addition to this minimum rental the landlord was entitled to ten cents per cubic yard for the sand and gravel removed.

The defendants rely on *McIntyre* v. *McIntyre Coal Co.* (105 N. Y. 264), where the learned counsel says there was a coal lease " in almost the exact terms of this lease." Counsel is wrong in his interpretation of the lease in the *McIntyre* case. In that case the lessee covenanted to mine a stated minimum quantity of coal per year and to pay royalties of thirty cents a ton therefor quarterly. The lease contained the following express proviso (p. 268), " provided that if in any year the party of the second part shall mine and carry away more than the proper minimum quantity for such year, such excess, or so much thereof as may be necessary, may be set

off against the deficiency, of any other year or years, within the same division of the term hereby demised.   So much of said excess as is applied to make up such deficiency, having been paid for, shall not be paid for again."

The defendant mined and removed coal from the premises during twelve years of the twenty-year term.   It then claimed that it had mined and paid for sufficient coal to constitute an average of 100,000 tons for the full term and that it could, therefore, suspend operations under the agreement and abandon the premises to the plaintiff.   The plaintiff contended that the defendant could not under the agreement apply the excess of coal removed during the first twelve years of the term as a setoff against the quantity of coal which it was under an obligation to remove or to pay for during the remaining eight years, but that the defendant was under an obligation to excavate 100,000 tons during each year irrespective of the amount which had been excavated during preceding years. The question raised in that case was whether the proviso contained in the agreement applied to excess of coal removed prior to the date when the minimum payments became due, or whether it applied to excess of coal removed after such minimum payments had been made.   The majority opinion in the Court of Appeals held that the proviso referred to excess of coal whether removed before or after the minimum payments were made, and that, therefore, the lessee was under no obligation to continue the removal of coal or to continue payments under the agreement, inasmuch as the coal already removed was more than sufficient to average 100,000 tons for each year of the term.

The question involved in the *McIntyre* case differs from the main question presented on these appeals, in that the agreement now under consideration does not contain a proviso allowing the application of minimum payments as a credit on the amounts due for sand and gravel removed either in prior or in subsequent years. It should also be noted that the McIntyre lease provided for the mining of a minimum quantity of material, whereas the present lease provides for the payment of a minimum rental whether the lessee excavated sand or did not excavate.

The difference between the two agreements is apparent, and I think we should refuse to be drawn into a discussion of these mining leases containing provisions which are not found in the lease in the case at bar.

Conceding for the sake of argument all that defendant, respondent, says about the general rule that in cases of doubt or uncertainty a written lease is construed in favor of the grantee or lessee, I do not agree that there is any doubt or uncertainty or ambiguity

about the defendant's agreement in the case at bar.   The intention of the parties gathered from the entire instrument is to govern. (*Nassau Hotel Co.* v. *Barnett & Barse Corp.*, 162 App. Div. 381; affd., 212 N. Y. 568.)   The appellants cite numerous authorities to sustain their contention that under the lease in the case at bar the plaintiffs were entitled to the minimum rental during each year of the term down to its expiration, irrespective of the amounts paid in any one year for royalties when the gravel excavated exceeded 60,000 cubic yards.   They say the parties construed the lease themselves, when the defendant before beginning its excavation nevertheless paid the minimum rental at the outset.   When an instrument is clear and unambiguous, we are not obliged to refer to " practical construction " by the parties or the abstruse reasons of learned courts concerning other leases and other agreements differing from that now before us.   These considerations may be valuable for the purpose of ascertaining the intention of the parties, but if the intention is clear and manifest, it must control, regardless of all other rules.   The agreement between the parties in the case at bar is a lease of land with the privilege of removing material, and is not a contract for the sale of material in place.   If there is necessity to resort to the action of the parties to aid in its interpretation (*Halperin* v. *McCrory Stores Corp.*, 207 App. Div. 448, and cases cited in opinion of JAYCOX, J.; affd., 239 N. Y. 547), we find that, in accordance with their agreement to pay the minimum rental of $1,500 for each three months of each current year, whether they removed sand or not, the defendants during the term of the lease prior to April 1, 1919, when they began operations, regularly paid the quarterly minimum rental.

I am, therefore, forced to the conclusion that the learned justice erred in granting defendant's motion for nonsuit, and that the judgment should be reversed on the law and a new trial granted.

The appellants insist that their motions for judgment on the pleadings for the rent accruing prior to the date when the notice of cancellation became effective, viz., August 21, 1924, should have been granted by the court, leaving the matters to be litigated at the new trial to the rent accruing after the date of alleged cancellation.   If I am right in my interpretation of the agreement between the parties, I see no escape from the proposition that no defense is pleaded to the claim for the rent prior to August 21, 1924.

The pleadings in actions No. 2 and No. 3 are not printed in this record, although the caption of the minutes of the trial is headed actions 1, 2 and 3, and it is stipulated that " these three cases be tried together."   And the record shows that they were tried

together. However, there appears to be no dispute about the matters involved in actions 2 and 3, and the nature of these actions is shown in the statement at the head of the printed case. The alleged defenses of the defendant, respondent, are set out in the answer in action No. 1.

As to the minimum rental sued for in action No. 2, it was for the quarterly installments which became due after December 21, 1923, when the defendants admit they " abandoned " the premises on their theory that " the said premises were totally exhausted of sand and gravel." But the parties by their written lease under seal had expressly provided for the only contingency that would justify a cancellation of the lease. The lease contains no provision for cancellation on the ground of exhaustion of sand and gravel. Such " exhaustion " if proved would be no defense to the plaintiffs' claim for the minimum rental down to the end of the term.

The lease of the property was for ten years, with an absolute covenant to pay a minimum rental of $6,000 per year in each year of the term. If there was any " exhaustion " of sand and gravel, obviously it was brought about by defendant's excavation of excessive quantities of sand and gravel during the first six and one-half years. Under the lease such proceedings on the part of the tenants were not to terminate the lease. It was only in case extended beds of clay were discovered upon the leased property within fifty feet of the natural surface of the ground, upon which beds of clay there was not more than twelve feet of sand and gravel, with the result that a deposit of sand or gravel of at least twelve feet in thickness was not available to the tenant, in that case only was the tenant entitled to give three months' notice of his intention to cancel the lease, upon the expiration of which period the future obligations of the parties should terminate.

But this was not the reason stated in the answer for defendant's " abandonment " of the premises in December, 1923. It says in its answer that it abandoned the premises because there remained no sand or gravel thereon which could be excavated. In other words, it had excavated to such an extent that it had used up all the sand and gravel which was upon the property when leased. There is nothing said in this third defense about the existence of any " beds of clay," nor does it allege any compliance with the requirement that it should give three months' notice of cancellation. It simply packed up its machinery and moved away, abandoning the leased property in December, 1923, without any three months' notice. This, in my opinion, it could not do. That was not the intention of the parties as disclosed by the lease. If it claimed a right to cancel the lease, it should give the three months' notice

at the expiration of which it could be heard to assert that the " beds of clay," etc., existed which gave it a right to cancel the lease.

I again assert that the transaction between the parties was not a sale of sand and gravel; it was a ten-year lease of property with privilege of removing sand and gravel, but with a similar provision for the payment of a minimum rental during each of the ten years, whether the tenant removed material or not.

Strictly speaking, it may be doubted whether the notice of May 21, 1924, assuming to cancel the lease, was, in any case, effective. Because it is very evident that the tenant was not asserting the existence of any " beds of clay " with insufficient sand or gravel covering them. It was abandoning the premises because it claimed it had excavated all the sand by December, 1923. But, taken in connection with the fifth separate defense, it may be said that the defendant asserts in the separate defense what it did not assert in its notices, and which seems to me to be somewhat inconsistent with its previous statement. But assuming that the clay beds existed, in that case respondent had a right to cancellation three months after they served the notice, viz., August 21, 1924, and up to that date they were responsible for the minimum rental.

In my opinion the judgment should be reversed upon the law, with costs. Plaintiffs' motions for judgment on the pleadings in action No. 1 and on the first cause of action in action No. 2, granted; the remaining causes of action to be severed, and a new trial granted as to the issues arising thereon, with costs to appellants to abide the event.

Manning and Young, JJ., concur; Kapper, J., dissents, with the following memorandum: I do not think this was a lease of land, but that it was a sale of sand and gravel. The period of ten years was the fixation of time for the exercise of the privilege of removal of the sand and gravel, and the sum of $60,000 was exacted as the minimum amount to be paid. Far in excess of that sum has been paid, and the plaintiffs now have their land and for some time have had it freed from the defendant's occupancy. Jaycox, J., concurs with Kapper, J.

Judgment reversed upon the law, with costs. Plaintiffs' motions for judgment on the pleadings in action No. 1 and on the first cause of action in action No. 2, granted; the remaining causes of action to be severed, and a new trial granted as to the issues arising thereon, with costs to appellants to abide the event. Settle order on notice.