FRANK COLONNA, Appellant, *v.* STATE OF NEW YORK, Respondent.

Fourth Department, June 29, 1928.

*Herbert T. Reed* and *Charles G. Signor*, for the appellant.

*Albert Ottinger*, *Attorney-General* [*John H. Clogston*, *Deputy Attorney-General*, of counsel], for the respondent.

HUBBS, P. J. The claimant in this action owned a stone quarry at Albion, N. Y., and the premises upon which it was situated, consisting of five acres of land. On September 2, 1919, he executed a lease of the quarry to a copartnership known as Colonna & Co. The lease commenced on September 2, 1919, and was to run to September 2, 1924, and was stated to be for the purpose of quarrying, producing, breaking and dressing stone. Colonna & Co. agreed to pay as rental eight per cent of the market value of all stone produced, said rental to be due and payable as soon as the stone was produced and measured. The claimant, as lessor, was given the right to determine in what portion of the quarry the operations were to be carried on.

On September 4, 1919, the copartnership began to operate the quarry. At that time the quarry was full of water. Adjoining the land upon which the quarry was located was the Barge canal. The quarry had not been pumped out prior to the formation of the partnership, *i. e.*, the date of the execution of the lease, since early in the preceding year. In the spring of 1919 the level of the Barge canal had been raised. After the partnership began operations and had pumped the water down from seven to nine feet, it was found that water was coming into the quarry from the canal. The partnership continued to pump until most of the

water had been removed, but it was found impossible to dry the floor of the quarry sufficiently so that stone could be quarried from the pit or quarry floor. It continued to pump at intervals from then until December sixth, when quarrying operations were discontinued for the season. Upon discovering that the bed of the quarry was wet and could not be worked to advantage, the partnership began stripping the easterly side of the quarry at the surface and confined its quarrying operations to such stone as could be removed from that portion. The Court of Claims found that the leakage from the canal was caused by the negligence of the State.

In the case of *Colonna* v. *State of New York* (224 App. Div. ——), which action was tried with the present action, this court has determined that the claimant copartnership used reasonable efforts to remove the water from the quarry and that on account of the leakage from the Barge canal it is entitled to recover the difference between what it would have cost to pump out the quarry had it not been for the leakage from the Barge canal and what it expended in attempting to keep the water out of the quarry, that difference being $1,427.13, and that it is entitled to recover also the difference between what it would have received on the sale of paving blocks and curbing from said quarry if there had been no leakage and what it actually received for the same classes of material produced from said quarry during said period, less expenses which would have been paid in producing such additional materials and less the eight per cent royalty due Frank Colonna, making the net loss resulting from their inability to quarry in the pit or bottom of the quarry the sum of $5,109.50.

The claimant here seeks to recover eight per cent upon the difference between what would have been produced had it not been for the leak and what was actually produced, which amount of $488 he claims to be loss of royalties or rental under the lease. The Court of Claims has found that the agreement between the claimant and Colonna & Co. does not give to the claimant any right of action against the State for damages which he suffered by reason of the inability of Colonna & Co. to operate his quarry because of leakage from the canal, and his claim was dismissed upon the merits. The State contends on this appeal and the Court of Claims has found that claimant cannot recover because his claim is based upon a contract which did not guarantee to claimant any specific sum and, therefore, it does not give to him any right of action against the State by reason of the inability of Colonna & Co. to operate the quarry. The State also contends that as Colonna owned the quarry and the stone therein and the

stone was not removed, he cannot recover because he still has the stone left and the value of the stone was not proved.

. This court decided, contrary to the decision of the Court of Claims, that the claimant Colonna & Co. established by a preponderance of the evidence that it could have produced the quantity of stone which it set forth in its claim it could have produced, and that it is entitled to damages based upon loss of profits. It would seem to follow that the claimant here should recover, unless prevented for the reasons urged by the respondent. Even assuming, but not deciding, that the agreement between the claimant and Colonna & Co. was unilateral, still I think the claimant is not prevented from recovering. While the contract did not guarantee to the claimant any specific sum, the parties to the contract or lease conducted their operations under it and, under the facts in this case, a third party is not entitled to take advantage of the fact that the contract was unilateral in nature to escape liability for damage resulting from its negligent act. (13 C. J. 333; *Rice* v. *Manley*, 66 N. Y. 82; *Laskey Feature Play Co., Inc.*, v. *Fox V. Co.*, 93 Misc. 364; affd., 174 App. Div. 872.) In the amount of damages awarded to the copartnership of Colonna & Co. against the State, the eight per cent royalty payable to the claimant herein was deducted from the claim as allowed. If the amount of such royalty is not allowed to the claimant herein, the effect will be that the State will escape the payment of the full amount of the damage caused by its negligence.

The determination of the question as to whether the claimant is prevented from recovering because the stone has not been removed and remains his property depends upon whether the lease in question constituted an agreement for a sale of the stone or a lease of the property. The nature and effect of mining leases has long been the subject of controversy in the courts. Upon that question it is said in 18 Ruling Case Law (p. 1186, § 96): " Mining leases, it has been said, form a distinct class of instruments, creating special and peculiar legal relations and rights. The question whether a mining lease, so called, is merely a lease of the land with the privilege of removing the minerals during a certain period, or is in reality a sale of the land, is a question which is determined by the facts of each individual case, and the laws of the particular jurisdiction. According to one view a lease of mining property, with the right to remove the mineral, is a lease simply and not a sale of land. Under this rule the surface owner owns the whole land and everything in place in it, and the lessee simply has a right to use the land for a purpose, a terminable right, which may be long or short in years; that is, a mere chattel real, issuing out of lands, but

constituting a distinct estate, a valuable one as property. Where this view obtains it has been held that a grant of the privilege of taking ore from another's land for an agreed price per ton is not a sale of all the ore still in the land, notwithstanding a stipulation that the privilege is to be given to no one else. Another rule is that the title to the minerals and an estate therein are conferred by an instrument by which one grants, demises, leases, and lets to another for a term of years a certain tract of land for the sole and only purpose of mining. In determining whether a particular instrument is or is not a mining lease the courts should give controlling weight to the intent of the parties, and it makes no difference that the parties may have designated the conveyance as a lease and referred to it as such. If the instrument shows an intention to convey all of the specified mineral in the particular land, it should be considered as a sale or absolute conveyance thereof."

A leading case upon this question is *Von Baumbach* v. *Sargent Land Company* (242 U. S. 503) where it was said: " We think that the payments made by the lessees to the corporations now before the court were not in substance the proceeds of an outright sale of a mining property, but, in view of the terms of these instruments, were in fact rents or royalties to be paid upon entering into the premises and discovering, developing and removing the mineral resources thereof."

The rule adopted by the United States Supreme Court, as outlined in *Von Baumbach* v. *Sargent Land Company* (*supra*) and cases there cited, seems to be the law in this State. It was held in *Baker* v. *Hart* (123 N. Y. 470) that an instrument which gave to the lessee the sole and exclusive right of entering in and upon the lands of the lessor for the purpose of quarrying, cutting, crushing and removing stone for the term of ten years, but not to hold possession of any part of the said lands for any other purpose, was a lease and made the parties landlord and tenant, but gave the lessees no right of action for trespass against a stranger for quarrying stone, because the tenant had title to only such stone as he should quarry and remove within the specified term.

In *Buck* v. *Cleveland* (143 App. Div. 874) it was said: " A feature of some of the above cases is that the land itself was leased for the sole purpose of prospecting, digging, extracting and taking away whatever should be found. Such is a fair interpretation of the lease under consideration. * * * The whole instrument illuminated by the subsequent writings shows that he intended to lease the twenty acres for the purpose specified. This created the relation of landlord and tenant notwithstanding the fact that the

rent was regulated by the number of tons of minerals which should be extracted."

In *Bevin* v. *Steers Sand & Gravel Company, Inc., Nos. 1–3* (218 App. Div. 502) the plaintiff sought to recover installments of rent alleged to be due under a written lease of certain beach property, which was leased to the defendants "for the purposes of a sand and gravel business only" for a term of ten years at a minimum rental of $6,000 per year and royalties, based upon the gravel and sand removed therefrom. If the material removed exceeded a certain quantity the lessor, under the terms of the lease, became entitled to ten cents per cubic yard on the excess. The defendants continued to operate the gravel pit until it had exhausted the sand and gravel and sought to cancel the lease prior to the expiration of the period, although the lease contained no provision for a cancellation based upon exhaustion of sand and gravel. The defendants paid, during the period of its operation of the pit, a sum largely in excess of the aggregate minimum rental. The installments of rent alleged in the complaint to be due were for periods following the attempted cancellation of the lease. The court held that even though the defendants had paid a sum in excess of the aggregate minimum rental, the plaintiff was entitled to the rent subsequently accruing. Presiding Justice KELLY, in the prevailing opinion, stated and reasserted that the transaction between the parties was not a sale of sand and gravel but that it was a ten-year lease of property with the privilege of removing sand and gravel, but with a similar provision for the payment of a minimum rental during each of the ten years, whether the tenant removed material or not. Mr. Justice KAPPER dissented upon the ground that the instrument in question was not a lease of land but rather a sale of sand and gravel. Mr. Justice JAYCOX concurred in the dissent of Mr. Justice KAPPER. The case was unanimously affirmed, without opinion, in 245 New York, 508.

While decisions can be found in other States to sustain the contention of the State upon this question, it seems to me that the rule in this State' is as contended for by the claimant and that the instrument here under consideration must be construed as a lease of the quarry and not an agreement for the sale of the stone in the quarry. The rent or royalties provided for in the lease in question constitute income and not the proceeds of a sale of stone. The claimant has suffered a loss of income because of the negligence of the State and is entitled to the amount of such loss, with interest from February 8, 1924.

The judgment and order of the Court of Claims should be reversed upon the law and facts and judgment granted to the claimant for

the sum of $488, with interest from February 8, 1924, with costs in this court. Certain findings disapproved and reversed and new findings made.

All concur. Present — HUBBS, P. J., SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Judgment reversed on the law and facts and judgment granted for the claimant for the sum of $488, with interest thereon from February 8, 1924, with costs of the appeal to appellant. Certain findings of fact disapproved and reversed and new findings made.